BAILES, Judge.
This is an appeal from the judgment of the trial court awarding plaintiff-appellant workmen’s compensation benefits against defendants-appellees, A. E. Mathieu, d/b/a Mathieu Well Service, the employer, and Argonaut Insurance Company, the employer’s 'insurer, and further awarding plaintiff interest, penalties and attorney’s fees. The trial court awarded compensation at the maximum weekly rate of $35.00 from November '20, 1963, through March 11, 1964, and medical expenses in the amount of $802.35. On its finding that the defendants acted arbitrarily, capriciously and without probable cause by failing or refusing to pay plaintiff the workmen’s compensation due him within 60 days after notice, the trial court condemned defendants to pay interest, penalties and $600 as plaintiff’s attorney’s fee.
The plaintiff alleges that on November 14, 1963, he was employed by defendant, A. E. Mathieu, d/b/a Mathieu Well Service, as a driller, and was working in such capacity when he sustained a severe injury to his back. He alleges he was injured when he lifted a 100 pound sack of drilling mud from a barge to the drilling platform; that he is totally and permanently disabled by the injury. Further, plaintiff alleged that defendants were duly notified of this accident; that compensation benefits were refused and that such refusal was arbitrary, capricious and without probable cause.
Defendants’ answer is tantamount to a general denial of all the pertinent allegations of fact made by plaintiff, however, on trial of the case in the district court, the issues of fact were narrowed to a determination of whether the plaintiff sustained an injury, the nature of the injury, its duration, and whether defendants were guilty of such conduct as to make the infliction of penalties applicable.
The plaintiff contends (1) that the trial court erred in not finding that he was totally and permanently disabled within the contemplation of the Louisiana Workmen’s *147 Compensation law, and (2) that the trial court erred in decreeing the value of attorney’s services rendered plaintiff to be the sum of $600, when in fact the value of said services was substantially in excess of this amount.
Although defendants have answered the appeal of the plaintiff, their position is that the trial court’s determination of the duration of disability is correct and urge this court to affirm that finding. The defendants argue that the district court erred in awarding penalties and attorney fees, or alternatively, that the award should be reduced.
First, we will consider the question of injury, disability and duration. The plaintiff was treated by his family physician, Dr. Thomas Givens, who called Dr. Jules Dupont into the case for consultation. Dr. Givens is a general practitioner and Dr. Dupont is a specialist in internal medicine. Dr. Givens last saw plaintiff when he was released from the hospital in late December, 1963 and Dr. Dupont examined him the last time in the spring of 1964. In January, 1965, Dr. G. C. Battalora, Jr., examined the plaintiff at the request of defendants.' After the trial was completed, the district judge appointed Dr. G. Gernon Brown, Jr., an orthopedist, to examine and report his finding to the court. The reason stated by the court for this appointment, ex proprio motu, was that the court found the medical testimony to be conflicting.
The essence of Dr. Givens’ testimony is that he first saw the plaintiff about November 20, 1963, at which time he diagnosed plaintiff’s condition as pneumonia and prescribed oral medication; that plaintiff returned to him on November 30, at which time he hospitalized him for about a week. X-ray examination of plaintiff showed he had congestion in the lungs. After being discharged, plaintiff continued to have pain, and on December 12 he was again hospitalized. At this time x-ray examination showed fractures of the lumbar and thoracic spine. Dr. Givens then called in Dr. Dupont for consultation. Dr. Givens testified that he was not certain how long the plaintiff had had these fractures but that they had not completely healed and that they could have been aggravated by the lifting of heavy objects. He testified that the last time he saw the plaintiff, for any condition referable to his back, was when he was discharged from the hospital. He further testified that he had no opinion as to.when plaintiff should have gone back to work since such an opinion would be out of his field of medicine and that he would have referred plaintiff to an orthopedist for evaluation.
Dr. Jules Dupont was called by the plaintiff to testify. He stated that plaintiff’s pain, which was originally diagnosed as pneumonia, was actually of orthopedic origin. After his examination of plaintiff he ordered traction for the plaintiff and had a heavy board placed under the mattress on his bed. He also had a corset fitted to the plaintiff’s back for support. He testified that he advised plaintiff not to lift any heavy objects and not to return to hard manual labor. He found the plaintiff had previously fractured his back in several places. It was his opinion that the lifting of heavy sacks of mud aggravated the condition of the back. Dr. Dupont testified that he was not able to determine whether the plaintiff was physically able to perform oilfield work because he had not examined him, and additionally, he considered such an opinion to be outside of his specialty of medicine. He did state that the plaintiff was suffering from chronic pneumonia, or a lung condition called emphysema, and from the hundreds of cases of this type he has seen, this condition of the plaintiff is not going to improve.
Dr. George Battalora, Jr., an orthopedic surgeon, testified on behalf of the defendant. He testified that he first treated the plaintiff in June, 1963 and at that time the plaintiff was suffering from compression fractures in the lower dorsal and in the lumbar spine. He stated that when he *148 examined the plaintiff in January, 1965, he found evidence of the same fractures discovered in 1963 and the x-rays showed the condition of the back relatively unchanged since June, 1963. He testified that he found no evidence of a new injury to the back and found no evidence of any residual from any injury. He testified that if the plaintiff had injured and re-injured his back in November, 1963, the condition had cleared when he examined him in 1965. While he stated that he could not advise the plaintiff to return to his normal oilfield duties, he stated that if the plaintiff had been performing them satisfactorily prior to November, 1963, he could see no reason why the plaintiff could not still perform satisfactorily. He cited the fact of the plaintiff’s age, that he is suffering with osteoporosis, and that he has other physical problems as additional reasons why he would not advise the plaintiff to perform the manual labor of oilfield work. Dr. Battalora testified that lifting the heavy sacks of mud might have caused a back sprain and might have aggravated the condition of the plaintiff’s back causing temporary pain and discomfort but further testified that it was his opinion that no permanent damage had been done to plaintiff’s back by this lifting.
The court appointed Dr. G. Gernon Brown, an orthopedic surgeon practicing in New Orleans, to examine the plaintiff and report his findings to the court. Dr. Brown stated that he examined the plaintiff on February 24, 1966, and that he noted hypertrophic changes in the plaintiff’s back and some degree of wedging of the dorsal vertebrae. He further stated that there appeared to be compression fractures of several vertebrae. He reported that there is evidence of advanced osteoporosis involving the dorsal, lumbar, and cervical spine as well as the pelvis and hips. But, he stated, this condition is not attributable to trauma but occurs with aging and represents a deficiency in the protein content of bone. He reported that the hypertrophic changes in the spine were degenerative changes of long standing and were present prior to November, 1963. He stated that there was some degree of compression of the vertebrae prior to June, 1963, and further states that the degree of compression of the vertebrae appears essentially unchanged between June, 1963 and December, 1963. His opinion was that the plaintiff is disabled and is not suitable for employment in heavy manual labor.
The plaintiff testified that when he picked up the heavy sack of mud he had sharp pains up and down his spine. He testified that since the accident he has been experiencing pain every day, is no longer able to perform the functions that he did as a driller in the oilfield. In spite of this fact, the plaintiff testified that he forgot to make out an accident report, has never returned to the doctor since he was last discharged from the hospital in December, 1963, and is taking no type of medication for his pain. He further stated that the lack of funds kept him from returning to the doctor but then testified that he had consulted the doctor several times for other troubles.
The plaintiff has failed to show that his injury totally and permanently disabled him. The testimony of the four doctors support this conclusion. While each of them state that lifting heavy objects would have aggravated the condition of the plaintiff’s back, not one of them testified that this aggravation totally and permanently disabled the plaintiff. The doctors’ testimony introduced by the plaintiff proves only that the condition of the plaintiff’s back was aggravated by his work in the oilfield; they refused to give an opinion as to whether he was disabled but stated that this was a question for an orthopedist. The testimony of the orthopedists does not indicate that the aggravation suffered by the plaintiff caused a permanent disability. Dr. Battalora stated definitely that there was no permanent damage to the plaintiff’s back but that he would not advise him to continue working in the oilfield because of *149 his age, lung trouble, and osteoporosis of the hack. While the court-appointed expert, Dr. Brown, stated that the plaintiff was disabled and was not suited for heavy manual labor, he did not connect this disability to the accident of November, 1963, hut rather indicated that it was caused by the compression of the vertebrae which existed prior to June, 1963. It was his opinion that there had been no change in his condition since that time, nor in the osteoporosis which antedated June, 1963.
The jurisprudence is well settled that one entitled to recovery must make and establish his claim to a legal certainty. It does not suffice for the plaintiff to make out a case that is merely probable, he must establish his claim to a legal certainty by a reasonable preponderance of the evidence. Duhon v. Cormier (La.App.1966) 186 So.2d 645, Martin v. Westchester (La.App.1966) 183 So.2d 769, Gassiott v. Gordey, La.App.1966) 182 So.2d 170, Hayward v. Carraway (La.App.1965) 180 So.2d 758, Perkins v. Texas & New Orleans Railroad Co. (1962) 243 La. 829, 147 So.2d 646, and Naquin v. Marquette Casualty Co. (1963) 244 La. 569, 153 So.2d 395.
As to proof before us of an injury that produced a total and permanent disability there is none. The basis for sustaining the finding of temporary total disability is the testimony of Dr. Battalora, that the plaintiff suffered a back sprain which probably disabled him for the period of time the trial court awarded compensation, which we feel, when considered in connection with the testimony of plaintiff’s medical experts, justifies an affirmance of the trial court’s finding of disability from November 20, 1963, through and including March 11, 1964.
We will now consider the plaintiff’s claim for penalties, and attorney’s fees. LSA-R.S. 22:658 provides that insurers are to pay the amount of the claim due an insured employee within sixty days after receipt of satisfactory proof of loss from the insured, employee or any party in interest. It further provides that any failure to make the payment within the prescribed sixty days “when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of 12;% damages on the total amount of the loss, payable to the insured, or to any of said employees, together with all reasonable attorney’s fees for the prosecution and collection of such loss. * * * ”
The record shows that plaintiff was aware of the necessity to report an accident to the employer. He testified he forgot to make a report of the accident injury. Even so, by letter dated January 16, 1964, the employer was notified by the first attorney that represented the plaintiff that the plaintiff had an accident on November 14, 1963, and that he was making claim, on behalf of plaintiff, for workmen’s compensation benefits. The fact that this attorney later withdrew from the representation of plaintiff does not nullify the notice of the accident to the employer, which is tantamount to notice to the insurer.
It appears from the record that the first contact made by plaintiff with his employer was after he was dismissed from the hospital in late December, 1963. Plaintiff went to the employer’s place of business to request employer to pay his medical and hospital expenses for the treatment of an ailment he called pneumonia. The supervising representative of employer denies that plaintiff gave any notice of injury. After discussing his request for payment of the medical expenses, plaintiff was advised by Mr. Thomas Mathieu to seek the advice of an attorney because he did not believe he was responsible for the expenses of his illness. Plaintiff accepted his advice and did consult and retain legal counsel.
Next, the employer was contacted by letter from an attorney no longer in the *150 case. Mr. Mathieu testified that he called the attorney in response to a letter he had received from him, and after advising the attorney of the nature of Mr. Barham’s claim, the attorney advised him that under the circumstances he would withdraw from the representation of Mr. Barham.
On May 24, 1964, the defendant insurance company received notice of the injury of plaintiff from the plaintiff’s present attorney. Shortly thereafter the claims representative contacted plaintiff’s counsel. According to his testimony counsel refused to give him copies of statements he had obtained from witnesses to the accident, or the name of the witnesses.
Believing that he had fulfilled all the functions of his office, the claims representative made no further investigation to determine the merits of plaintiff’s claim, although he was furnished copies of the reports of Drs. Givens and Dupont stating that plaintiff had been injured and was disabled to work. No effort was made by defendant insurance company to contact the fellow workers of the plaintiff. In so far as the record reflects, there was no reason why defendants could not have determined from an investigation of the alleged accident that plaintiff did complain of pain upon the lifting of the sack of mud on the night of November 14 while working on the rig. Two of the three fellow workmen of the crew in which plaintiff worked on this occasion corroborated the testimony of plaintiff in this respect. No effort was made by defendant insurance company to secure a medical examination of plaintiff to corroborate or refute the reports and findings of Dr. Givens and Dr. Dupont. The defendant did not initiate an examination of plaintiff until January 22, 1965.
Defendants appear to find comfort in resisting payment of penalties and attorney’s fees in the fact that plaintiff stated to defendant employer that he had had pneumonia instead of claiming a com-pensable injury when he asked the employer to pay his medical expenses. This statement of plaintiff that he had had pneumonia, rather than being prejudicial to his claim, appears clearly justified in view of the initial diagnosis of Dr. Givens. However, in their respective medical reports, both Dr. Givens and Dr. Dupont, attribute plaintiff’s disability to the injury of November 14, 1963, in lifting the sack of mud on the rig location.
Under the circumstances of this case, and the evidence before us of the inaction . and inattention of the defendant insurance company to investigate and process this claim, even though initially reported as pneumonia, we find no manifest error on the part of the trial judge in awarding penalties and attorney’s fees. We concur in the finding of the trial judge that such lack of interest in making an earnest evaluation of the claim and lack of attention to the obligation it owed the plaintiff to be arbitrary, capricious and without probable cause. The fact that the injury to plaintiff was of a temporary nature does not render the claim less worthy or justify such inattention. We find that the amount of the attorney’s fee awarded to be adequate under the circumstances inasmuch as the plaintiff was the appellant herein.
For the foregoing reasons, the judgment appealed from is affirmed at appellant’s costs.
Affirmed.