HOOD, Judge.
This is a workmen’s compensation suit in which plaintiff claims benefits based on total and permanent disability. The suit was instituted by Francis H. Hilliard against Floyd Rue, and the latter’s insurer, Fidelity and Casualty Company of New York. The trial court rendered judgment awarding plaintiff compensation from September 17, 1968, until December 9, 1969, plus medical expenses, penalties and attorney’s fees.
Plaintiff appealed, contending that the trial court erred in finding that plaintiff was not totally and permanently disabled, and in failing to award a more substantial attorney’s fee. Defendant answered the appeal, praying that the judgment of the trial court be amended to reject the award of penalties and attorney’s fees.
We consider first the question of whether plaintiff’s disability has extended beyond and after December 9, 1969, that being the date on which the payment of compensation benefits was terminated by the trial court judgment.
The evidence shows that Hilliard sustained a crushing-type injury to his left hand and wrist on September 17, 1968, while he was working for defendant, Floyd Rue, *785 in Acadia Parish, Louisiana. Rue at that time was engaged in the business of drilling water wells, and plaintiff was employed by him primarily to operate a drilling rig. On the above-mentioned date, while plaintiff was assisting in drilling a water well, his left hand and wrist became crushed between a pipe and the derrick. Plaintiff contends that the injury which he sustained in that accident has disabled him continuously since that time from performing the type of work he was doing when the accident occurred.
Hilliard was taken to Dr. Robert L. Mc-Manus, a general practitioner, immediately after the accident occurred, and he was treated by that doctor for several months thereafter. He was examined later by Dr. William L. Zink, a general surgeon, and by Dr. William L. Meuleman, an orthopedic surgeon. Dr. McManus testified at the trial, and the two examining physicians testified by deposition.
Dr. McManus treated plaintiff periodically from the date of the accident until a few days before the case was tried in December, 1969. On his first examination he found abrasions on and some swelling of plaintiff’s left hand. An X-ray examination, however, showed no fractures or bone injuries of any kind. The treatment given by this physician consisted principally of dressing the hand, the administration of drugs and the injection of cortisone. After about seven weeks of this treatment, plaintiff told Dr. McManus that his pain was gone and the latter felt that he was much improved, so he discharged plaintiff on November 4, 1968.
Hilliard returned to Dr. McManus in March, 1969, complaining of continued pain in the wrist and hand, and the doctor began treating him again at that time. An X-ray examination made on April 10, 1969, showed some increased calcium deposit outside the bone, which Dr. McManus took to be “secondary to his traumatic injury,” or “traumatic arthritis secondary to the crush injury.” Although the doctor concedes that his conclusions as to disability are based largely on subjective findings, he feels that plaintiff’s complaints of pain are justified, and that because of that pain Hilliard is disabled from performing heavy manual labor. He stated, “If he’s having the type of pains he states he is, this is a disabling type of injury for his line of work.”
Dr. Zink examined plaintiff on July 11, 1969. He found swelling of the left wrist, and a calcification of the area which he believed to be in the tendons. He concluded that the injury which plaintiff received had caused some calcification in or about the tendons, and that Hilliard was suffering from “tendinitis” or “tenosynovitis.” He explained that the pain of which plaintiff complains is caused by an inflammation which “frequently will get better,” even without treatment. In his opinion it “was reasonable to assume that he [plaintiff] was having some pain,” and based on that assumption he felt that plaintiff was disabled from the heavy labor required of a water well driller. His conclusion was that plaintiff had a 15 to 18 per cent disability of the left hand and wrist.
Dr. Meuleman examined plaintiff on December 2, 1969. He found no swelling or any other objective signs which could account for Hilliard’s complaints of pain, and he testified that he “would have to view this as a nonratable disability.” He felt that plaintiff had a functional extremity, and that he could perform the work of a water well driller. He found none of the signs of tendinitis which he said would be present if plaintiff had suffered from that condition as long as he said he had, and he concluded that if Hilliard in fact had suffered tendinitis “then the condition had resolved itself through natural healing processes.” He stated that he disagreed “wholeheartedly” with Dr. Zink and with Dr. McManus in the latters’ conclusions as to disability, and that he found “no calcification within the tendons.” He testified “I would accept a complaint of pain in the sense of discomfort, or awareness that the wrist has been injured, say, in the past, but as far as disabling pain, just on his clinical findings *786 alone I couldn’t buy that by any stretch of the imagination. He doesn’t present any features, clinically or radiographically, that he has disabling pain, no sir.”
The lay evidence consisted of the testimony of plaintiff’s son, two neighbors and a former fellow employee. Their testimony generally is to the effect that plaintiff has performed no heavy work since the date of the accident, and that he has complained of pain in his wrist. The lay evidence shows, on the other hand, that while plaintiff was working for defendant Rue before the accident he also did plumbing work for others, and that after he sustained the above-mentioned injury he continued to do a substantial amount of plumbing work. Plaintiff also explained that he did not return to work for defendant Rue because the latter’s drilling rig “broke” about the time plaintiff was injured, that “he never did fix his rig up,” and that Rue was not drilling wells any more. The evidence shows that Hilliard is 60 years of age, and that he has made no claims for compensation benefits prior to this demand.
The trial judge concluded that plaintiff was entitled to compensation benefits at the maximum rate from the date of the accident until December 9, 1969, the latter date being the time “they [defendants] received the report of Dr. Meuleman to the effect that the plaintiff had no residual effects from the injury.” The judge reasoned that the conclusions of Dr. McManus and of Dr. Zink were based on subjective findings, and he stated that he believed and accepted Dr. Meuleman’s testimony that the injury had cleared up by the time he examined plaintiff. He observed that “a view of the X-ray taken by Dr. Meuleman indicates to this court and leads this court to believe that this would be the correct interpretation.”
Applicable here is the rule that when the injury complained of falls within a particular field of medicine, the testimony of a specialist in that field ordinarily is entitled to more weight than that of general practitioners. Prier v. Massman Construction Company, 205 So.2d 109 (La.App. 3 Cir. 1968).
We are aware of, and have considered, another established rule that the opinions expressed by the attending or treating physician should be accorded more weight than those expressed by an equally well qualified doctor who has examined the injured person only once, and then for purposes otherrthan for treatment. Harrell v. Southern Pulpwood Insurance Company, 155 So.2d 281 (La.App. 3 Cir. 1963). And, where there is a conflict in the medical evidence, the court should consider and give much weight to the lay testimony in determining whether a claimant is disabled. Blanchard v. Travelers Insurance Company, 121 So.2d 515 (La.App. 1 Cir. 1960).
Also applicable is the rule that the factual conclusions reached by the trial judge, particularly those involving a determination of the credibility of witnesses and the reasonableness and truthfulness of their testimonies, should be given much weight and should not be overturned unless found to be clearly erroneous. Satterwhite v. Zurich Insurance Company, 199 So.2d 429 (La.App. 1 Cir. 1967). It is the duty of the trial judge to seek the truth, and to evaluate the testimony of the expert medical witnesses by the same rules that apply to other witnesses. Page v. Home Indemnity Company, 168 So.2d 409 (La.App. 3 Cir. 1964).
We have considered all of the evidence with these rules in mind, and have concluded that it supports the conclusions reached by the trial judge as to the disability of plaintiff. We find, as he did, that plaintiff was disabled from September 17, 1968, that being the date on which the injury was sustained, until December 9, 1969, but that he recovered from his injury and disability by the last-mentioned date. We thus concur in the finding of the trial court that plaintiff is entitled to recover compensation benefits for the above-mentioned period of time, but that he is not en *787 titled to recover such benefits after December 9, 1969.
We turn now to the question of whether the trial judge erred in awarding penalties and attorney’s fees to plaintiff.
Plaintiff’s employer, Floyd Rue, was present when the accident occurred, and he thus had actual notice of the fact that plaintiff had sustained a disabling injury. On December 9, 1968, the Edwards Insurance & Real Estate Agency, of Crowley, Louisiana, through which agency the policy was issued to Rue, mailed to defendant Fidelity the following documents: (1) An “Employee’s First Report of Injury,” signed by Mrs. Floyd Rue, containing a formal report of the injury that plaintiff had sustained; and (2) an “Agent Company Memo,” advising that a medical bill was due in connection with this injury, and attaching to the memo a bill from Dr. McManus for the treatment he had administered to plaintiff. Both of the above-described documents were received by the defendant, Fidelity and Casualty Company, on December 10, 1968.
The First Report of Injury submitted by Rue did not indicate the “probable length of disability,” or whether Hilliard had recovered from the injury. It did state, however, that plaintiff returned to work on October 1, 1968, although there is no indication in the report as to what kind of duties he performed when he returned or as to how long he worked after the accident.
The medical bill submitted by Dr. Mc-Manus, which was attached to the Agent Company Memo and received by defendant Fidelity on December 10, shows that Hil-liard received treatment on eight different dates by Dr. McManus, beginning on September 17, and continuing until November 4, 1968. One of those treatments was administered on October 1, 1968, and three of them were administered after that date. This medical bill, therefore, indicates that plaintiff was receiving medical treatment after the date on which he reportedly returned to work.
On July 2, 1969, plaintiff’s attorney wrote to defendant Rue, formally demanding payment of workmen’s compensation benefits, and that letter was forwarded to Fidelity. And, on July 7, 1969, the Edwards Insurance Agency in Crowley wrote to Fidelity, advising that company that Hilliard was claiming compensation benefits. Both of these letters were received by Fidelity on July 18. A medical report from Dr. Zink was received by Fidelity on July 25, and another medical report from Dr. McManus was received by Fidelity on August 4, 1969. This suit was instituted on August 12, 1969.
Defendant Rue made two payments of $50.00 each to plaintiff after the accident occurred. Fidelity paid the bill of Dr. Mc-Manus, amounting to $41.00, on July 14, 1969, but it has paid no compensation benefits to Hilliard. Both of the defendants filed an answer to plaintiff’s petition denying liability for any of the benefits claimed in this suit.
The trial court awarded penalties as provided in LSA-R.S. 22:658 and attorney’s fees in the sum of $750.00.
Defendant contends that the trial court erred in awarding these penalties because, first, the 60-day delay provided in the above-cited section of the Revised Statutes had not elapsed before the suit was filed, and second, defendant was not arbitrary or capricious in failing to make the payments prior to the filing of this suit.
LSA-R.S. 22:658 provides that insurers must pay the amount of any claim due an insured “within 60 days after receipt of satisfactory proofs of loss from the insured” and that failure to make such payment withing that delay after receipt of such proofs and demand therefor will subject the insured to penalties and attorney’s fees when such failure is found to be arbitrary, capricious or without probable cause.
In this case defendant Fidelity received a formal report of the accident and injury on December 10, 1968. On the same date it received a bill from Dr. McManus for the *788 medical treatments he had administered to Hilliard up to November 4, 1968. Fidelity, however, made no investigation of the matter and made no attempt to determine whether compensation benefits were due, until about seven months later, in July, 1969, after it received a formal demand from plaintiff’s attorney.
The defendant insurer contends that it was not arbitrary or capricious in failing to investigate and to bring compensation payments up to date shortly after the original report of the injury was received, because the report showed that plaintiff had returned to work on October 1, 1968, and that the medical bill of Dr. McManus indicated that Hilliard had sustained only a minor injury.
A similar issue was presented in Harmon v. Mid-South General Contractors, Inc., 218 So.2d 390 (La.App. 2 Cir. 1969). Our brothers of the Second Circuit Court of Appeal, in holding that the plaintiff was entitled to recover penalties and attorney’s fees, said:
“[1] We are of the opinion that the evidence shows a lack of proper concern on the part of the insurer for the rights of plaintiff. In the case of Barham v. Mathieu, La.App., 198 So.2d 145 (1st Cir., 1967), the court found that inaction and inattention to a claim of an injured employee was arbitrary and capricious and without probable cause.
The defendant insurance company in this case, upon receiving notice in early October, was aware that the injury occurred on May 14th and that a considerable delay had already been encountered by reason of the failure of the employer to promptly notify the insurer. It was, therefore, the obligation of the insurer to process and evaluate the claim as quickly as possible rather than to use the slow and circuitous method utilized in this matter. The delays occasioned in this matter are unreasonable and tend to defeat the purpose of the compensation statute. We, therefore, are of the opinion that the plaintiff is entitled to penalties as provided by LSA-R.S. 22:658 and reasonable attorney’s fees.”
In the instant suit we think the notice of the accident and injury which Fidelity received on December 10, 1968, together with the bill of Dr. McManus showing that medical treatment had been administered to Hilliard from the date of the accident until at least November 4, 1968, constituted an adequate “proof of loss,” and “demand,” as required by LSA-R.S. 22:658. With reference to the proof of loss and demand which is required, our Supreme Court said in Moore v. St. Paul Fire and Marine Insurance Co., 251 La. 201, 203 So.2d 548 (1967):
“ ‘This demand, unless the insurer waives it by resisting all liability, may be either written or oral so long as it be shown to have fully informed and apprised the insurer of the employee’s intention to press for or demand payment of the claim submitted. * * * ’ ”
In our opinion the insurer, upon receipt of that report and demand, became obligated to process and to evaluate the claim within a reasonable time. We think its failure to do so within seven months after formal notice of the claim constituted an arbitrary and capricious failure to comply with its obligation under the policy which it issued to Rue, and that there was no error in the judgment of the trial court condemning Fidelity to pay the penalties and attorney’s fees authorized by LSA-R.S. 22:658.
Considering the amount of compensation benefits to which plaintiff is entitled, and the time, work and skill required of his counsel in prosecuting this claim, we have concluded that the trial judge did not abuse his discretion in fixing the attorney’s fees at $750.00.
For the reasons herein set out, the Judgment appealed from is affirmed. The costs of this appeal are assessed to plaintiff-appellant.
Affirmed.