BLANCHE, Judge.
The sole issues presented by this appeal are the correctness of the judgment of the trial court denying the demand of plaintiff, Whit E. Pierson, for statutory penalties and attorney’s fees in this workmen’s compensation claim, as well as the denial of plaintiff’s claim for tort damages against his employer and its workmen’s compensation insurer.
Plaintiff instituted suit against his former employee, Sun Erection Company, Inc.,[1] and its workmen’s compensation insurer, The Travelers Insurance Company, for total and permament compensation benefits, medical expense benefits, statutory penalties and attorney’s fees, as well as for tort damages. Plaintiff claims that he sustained a total and permanent disabling back injury in connection with a job-related accident which occurred on May 6, 1971. The evidence shows that the accident occurred when plaintiff dropped a large steel plate, causing lacerations to the first, second and third toes of his right foot. Plaintiff was taken immediately to the office of Dr. Morris William Levy, whose only finding on examination and diagnosis was “laceration of paronychium of right first, second and third toes.” X-rays taken at the direction of Dr. Levy were negative for fractures or other bony pathology. Dr. Levy administered appropriate treatment for the injured toes and indicated plaintiff would be able to resume regular work on May 15, 1971, or nine days post-accident.
Plaintiff saw Dr. Levy on two subsequent occasions, May 7, 1971, and May 11, 1971, at which time Dr. Levy felt the injuries were healing satisfactorily, and indicated to plaintiff, according to his testimony, that plaintiff was to return to see Dr. Levy in the event of any further difficulty, which plaintiff never did.
The trial judge was confronted with diametrically conflicting testimony concerning that which transpired between plaintiff and Dr. Levy. Plaintiff testified that he repeatedly called to Dr. Levy’s attention the fact that he was experiencing extreme pain in his left leg, but Dr. Levy refused to treat plaintiff for these complaints and directed his professional attention solely to the trauma sustained to plaintiff’s right foot. Dr. Levy denied any such narration of complaints by plaintiff and further denied that there would have been any reason for Dr. Levy not to have treated all of plaintiff’s complaints which would possibly be related to the accident. The trial judge obviously resolved these questions adversely to plaintiff.
*275 The evidence further shows that plaintiff, in fact, returned to performing light duty for his employer, on the day after the accident, May 7, 1971, and continued to perform such duty for his employer until his employment was terminated following the working day of May 14, 1971, due to a reduction in labor force.
The evidence further shows that the only medical information ever submitted by Dr. Levy were two reports dated May 6, 1971, and June 25, 1971, respectively, both addressed to defendant insurer at its New Orleans office, both of which confirm plaintiff’s return to work and the absence of any disability. Both reports likewise signify injuries solely to plaintiff’s right foot. The employer’s first report of injury submitted to defendant insurer likewise indicates trauma sustained solely to the right foot and confirms the anticipated length of disability to be only two to three days post-accident.
The evidence further shows, however, that plaintiff continued to suffer discomfort with his left leg, as a result of which he sought the professional services of his family physician, Dr. Thomas C. Davis of Denham Springs, Louisiana, on May 28, 1971. Dr. Davis hospitalized the plaintiff on June 4, 1971, at Dixon Memorial Hospital in Denham Springs, Louisiana, and prescribed pelvic traction. Because of alleged recurrent attacks of back pain, Dr. Davis scheduled an appointment for plaintiff with Dr. J. Willard Dowell, an orthopedic specialist in Baton Rouge, Louisiana. Dr. Dowell examined the plaintiff on June 22, 1971, and following examination admitted him to Baton Rouge General Hospital for additional traction and possible surgery. Plaintiff remained hospitalized in Baton Rouge General Hospital from June 22, 1971, until June 25, 1971, when he was discharged because of inability to meet the financial requirements of the hospital. Plaintiff then testified he unsuccessfully sought admission to Earl K. Long Memorial Hospital in Baton Rouge, Louisiana, following which he retained the services of his present attorney. Plaintiff then was hospitalized at Veterans Hospital in New Orleans on July 7, 1971. Ultimately, plaintiff obtained the services of Dr. Walter H. Brent, Jr., an orthopedic surgeon in New Orleans, Louisiana, who performed a lami-nectomy upon plaintiff at Hotel Dieu Hospital in New Orleans for two herniated in-tervertebral discs on August 26, 1971.
Plaintiff, through his present attorney, filed suit for total and permanent workmen’s compensation benefits on July 1, 1971. The defense of this suit was assumed by the present counsel for defendants. The evidence shows that neither defendant employer nor defendant insurer had received any medical information from any treating or examining physician or from any other source other than the two medical reports submitted by Dr. Levy. Defense counsel requested such medical information from plaintiff’s counsel by letter dated July 22, 1971, reiterated the request on August 31, 1971, and again reiterated the request by letter dated September 7, 1971. Counsel for plaintiff submitted under cover of letter dated September 15, 1971, a medical report from Dr. Walter H. Brent, Jr., dated September 3, 1971, which report made reference to an earlier report by Dr. Brent to plaintiff’s counsel, which earlier report, however, was not submitted.
Indeed, it was not until November 16, 1971, that plaintiff’s counsel furnished defense counsel with various medical bills, the other medical report from Dr. Brent, as well as the Baton Rouge General Hospital record and the medical reports from Dr. T. C. Davis and Dr. J. Willard Dow-ell, which reports gave the first clear indication of an assumed causal relationship between plaintiff’s May 6, 1971, accident and his herniated intervertebral disc condition culminating in surgery, whereupon, the defendant insurer elected to commence paying compensation benefits for total and permanent disability and further paid accrued compensation benefits in the sum of $1,421 on November 23, 1971.
*276 We are convinced from our review of the record that the trial judge committed no manifest error in concluding that plaintiff failed to establish that defendant insurer was arbitrary or capricious in failing to pay compensation benefits to plaintiff sooner than it did. Plaintiff makes much of the fact that an employee of Hotel Dieu Hospital contacted both defendant employer and defendant insurer on August 20, 1971, requesting a guaranty of payment of the hospital expenses, which request was denied on the ground of absence of possession of any medical information indicating plaintiff’s May 6, 1971, accident involved any back injury, or any condition necessitating medical treatment other than that related to the trauma to plaintiff’s right foot. Under the circumstances, we do not believe defendant insurer can properly be held liable for statutory penalties and attorney’s fees on the basis of this incident. We likewise do not feel that said defendant insurer can properly be held liable for penalties and attorney’s fees because of a similar alleged incident involving Baton Rouge General Hospital, assuming arguen-do that such request was made by that hospital to defendant insurer or to defendant employer but denied for the same reason.
The cases relied on by plaintiff are factually distinguishable from the instant case. In Hilliard v. Fidelity and Casualty Company of New York, 241 So.2d 783 (La.App. 3rd Cir. 1970), the plaintiff sustained an accident on September 17, 1968, and was treated by Dr. Robert L. McManus, a general practitioner, for several months thereafter. The defendant insurer did not receive a first report of accident and injury until December 10, 1968, which report was accompanied by an itemized bill of Dr. McManus showing administration of medical treatment up to November 4, 1968. The defendant insurer, however, made no investigation of the matter and made no attempt to determine whether compensation benefits were due until about seven months later after it received a formal demand from plaintiff’s attorney. The defendant insurer unsuccessfully relied on a statement in the report of injury showing that plaintiff had returned to work on October 1, 1968, which indication was obviously suspect, however, in view of the itemized bill of Dr. McManus showing administration of medical treatment up to November 4, 1968.
In Barham v. Mathieu, 198 So.2d 145 (La.App. 1st Cir. 1967), this Court held that the defendant insurer’s failure to contact fellow workers to verify or refute occurrence of an accident, combined with its lack of effort to secure medical examination of claimant to corroborate or refute reports and findings of claimant’s physicians which were in the possession of the defendant, exhibited such a lack of interest in making an earnest evaluation of the claim and a lack of attention as to warrant imposition of penalties and attorney’s fees. This case is distinguishable from the instant case because the defendant insurer had possession of medical reports reflecting accident-related disability and concomitant liability for compensation benefits.
Plaintiff also cites Jackson v. Phoenix Insurance Company, 252 So.2d 511 (La.App. 4th Cir. 1971), but this case is factually distinguishable, inasmuch as the defendant insurer concurred in the correctness of the trial court’s finding of proper imposition of statutory penalties and attorney’s fees. The case of Montreuil v. Winn-Dixie Stores, Inc., 279 So.2d 701 (La.App. 4th Cir. 1973), is similarly factually distinguishable in that the defendants had access to medical information confirming plaintiff’s eighteen days’ hospitalization following the claimed accident, which circumstances and information available to the defendants could only reasonably lead to the conclusion that compensation benefits were due and owing, but were, nevertheless, arbitrarily not paid, thus warranting imposition of statutory penalties and attorney’s fees.
The last case relied on by counsel for plaintiff, Adams v. St. Paul Fire & Marine *277 Insurance Company, 270 So.2d 307 (La.App. 1st Cir. 1972), writ refused, 272 So.2d 377, (La.), is likewise distinguishable from the instant case. In Adams the compensation insurer terminated all compensation benefits to the plaintiff at a point in time where it was clear that the plaintiff would at least be entitled to receive compensation for a specific loss of a physical function under R.S. 23:122(4)(o), and before the insurer had paid a sufficient amount in disability compensation benefits to satisfy this minimum recognizable liability. This Court held that given such circumstances, the compensation insurer must at least tender to the plaintiff the amount admittedly owed, which tender cannot be conditioned upon plaintiff’s waiver of any rights to obtain a judgment either for permanent-partial or total and permanent disability benefits. This Court further held that the medical report of Dr. Kenneth Cranor dated December 17, 1969, on which the defendant insurer relied, indicated that this treating orthopedist was unable to determine at that time the extent of permanent impairment sustained by plaintiff. The medical report, accordingly, did not constitute sufficient justification for the insurer’s conclusion that it could with impunity terminate payment of compensation benefits, merely because the treating physician indicated that plaintiff should try to return to work from “a therapeutic” standpoint. It was also noted in Adams that compensation payments were made subsequent to the date of this report, thus reflecting that the defendant insurer did not consider plaintiff to be fully recovered.
The factual circumstances of the instant case failed to disclose the lack of due diligence on the part of defendant insurer in seeking to obtain appropriate supplemental medical information to establish a connexity between plaintiff’s accident and his back condition. In the absence of proof of arbitrary or capricious conduct on the part of the defendant insurer in failing to pay compensation benefits timely, or the absence of good faith, statutory penalties and attorney’s fees cannot properly be imposed.
Plaintiff’s additional demand for tort damages is unfounded and was properly denied by the trial court.
For the foregoing reasons, the judgment of the trial court denying plaintiff recovery of statutory penalties and attorney’s fees was correct, and the judgment appealed from is affirmed, with all costs of this appeal assessed to plaintiff.
Affirmed.

. Plaintiff amended his petition to name as defendant employer, B & G Crane Service, Inc., the corporation into which Sun Erection Company, Inc., was merged.