SAVOY, Judge.
Plaintiff, the lessee of an apartment located in the .rear portion of a theater building in Breaux Bridge, Louisiana, brought suit in tort against the Town of Breaux Bridge and its liability insurance carrier for damages arising out of the destruction of plaintiff’s personal property. Plaintiff’s petition alleges that an explosion and fire occurred in the theater building at about 4:50 P.M. on November 11, 1958; that the Town of Breaux Bridge owns, operates and has the exclusive control over the operation and maintenance of the town’s natural gas system; that a gas pipe or pipes adjacent and connected to the theater building and the apartment were in disrepair and had been leaking for some time; and, that plaintiff’s damages were caused by the re- *123 suiting explosion arising from the defendant town’s negligence in failing to maintain safe facilities and in failing to properly inspect and repair its lines. In addition, plaintiff plead the doctrine of res ipsa loquitur.
In answer to plaintiff’s petition, the town and its insurer, jointly filed exceptions of want of interest and capacity; no right of action; and, no cause of action. These exceptions were overruled. Each defendant also answered plaintiff’s petition, generally denying its allegations and in addition, the defendant insurer, in its answer, denied any liability under its policy of insurance.
Upon trial on the merits, the lower court rendered judgment in favor of defendants, from which plaintiff has perfected a devolu-tive appeal.
We will first consider the question of the applicability of the doctrine of res ipsa loquitur. A fact situation very similar to that of the case at bar is found in A. & J., Inc. v. Southern Cities Distributing Company, 173 La. 1051, 139 So. 477, 478. In that case, an explosion occurred in the basement of plaintiff's building. There was a service pipe leaving from the street main to a curb cock and there connected with the house pipe which conveyed the gas to the building. Following the explosion, a leak was found at the connection between the street main and the service pipe. In discussing the doctrine of res ipsa loquitur, our Supreme Court said:
“ * * * This is a rule of evidence peculiar to the law of a limited class of negligence cases; but where, as stated, the defendant has no control over the premises, or where there is a divided responsibility and the damage may have resulted from a cause over which the defendant had no control, all of the authorities hold, or at least the great weight of authority is, that the rule cannot be successfully invoked.”
We conclude that the doctrine of res ipsa loquitur is not applicable. The next matter for determination is whether the accident in the instant case was caused by the negligence of the Town of Breaux Bridge.
The record reveals that there was a leak in the service pipe leading from the main to the building. The leak was located about eight feet from the wall of the apartment at the rear of the theater building, and was detected coming from out of the ground through a crack in the sidewalk by pedestrians shortly before the time of the explosion. A link from the pipe in question was introduced in evidence, and there is a hole in it about one-quarter inch in diameter located in an elbow joint of the pipe. Plaintiff and his wife were not at home at the time of the explosion, having been out of town all that day and the night before. Both plaintiff and his wife testified that they had left the ground-floor windows slightly opened adjacent to where the leak was located, and that an attic fan located on the roof of the two-story apartment was open but not in operation. The only gas appliance within the apartment was a hot water heater located in the bath upstairs. There were, however, two gas jets in the apartment which were not connected to any appliances and which could not be capped because they were of the un-threaded variety. This type jet, when in use, is connected to an appliance with a flexible hose. The kitchen appliances, including a refrigerator, stove and washing machine, were electric.
Plaintiff’s hobby is building model airplanes and it was brought out in his testimony that he had a pint can of fuel for the plane in a spare bedroom on the second floor of the apartment. He testified that the can was properly capped.
The only evidence in the record dealing with the question of whether or not the leak was actually caused by the explosion was the testimony of two expert witnesses, Mr. Charles W. Parish, who testified for *124 plaintiff, and Mr. Cecil M. Shilstone, who testified for defendants.
Mr. Parish was of the opinion that the escaping gas was blown into the windows on the ground floor level by the prevailing winds, from where it then drifted to the upstairs floor, thus permeating the apartment, and was ignited by the pilot light of the gas heater in the bath upstairs or by some other possible ignition agency within the apartment. He felt further that the presence of the attic fan on the roof provided an opening which would have drawn gas upward from the first floor. He felt that the explosion had been caused by gas entering the apartment from or with the outside air. The record shows that, according to the Weather Bureau in Lafayette, Louisiana, ten miles distance from Breaux Bridge, the prevailing winds in Lafayette on the day of the explosion were about six miles per hour in velocity and were generally from the direction of the leak toward the building.
Mr. Shilstone, on the other hand, felt that the twenty-four inch attic fan on the roof would have been a more effective air intake than the slightly opened windows near the ground for the reasons that it provided a larger opening and was higher from the ground, being less obstructed from wind currents by other buildings, trees, and the like. It was his opinion that air or wind currents coming through the fan and going downward into the apartment would have forced air out of the apartment through the slightly opened windows rather than drawing air into the apartment through them. He did not feel that the explosion had been caused by gas which had entered the building from or with the outside air.
We have the opinions of two qualified experts, each equally definite in his opinion, and each diametrically opposed to the other on the question of causation.
Able counsel for plaintiff has cited many cases in support of his position; among them are, Koch v. Southern Cities Distributing Co. et al. (Ct.App., 2 Cir., 1931), 18 La.App. 664, 138 So. 178; Feely v. National Packing Co., 141 La. 903, 75 So. 837; and, Wolff v. Shreveport Gas, Electric Light & Power Co., 138 La. 743, 70 So. 789, L.R.A.1916D, 1138.
In the Koch case, supra, Judge Culpepper, father of one of the members of this Court, was the organ of the court.
The facts of that case were that on the morning of January 12, 1930, plaintiff, president of a drug store, opened the store and lighted the coffee urn. Underneath the store building was a basement. There was a trap door leading from the drug store to the basement, which door was kept closed. The gas meter, which measured the natural gas supplied to the drug store, was located in the basement, as were the carbonic acid gas tank and frigidaire, both of which were connected with the soda fountain. The two pieces of equipment had electric motors attached to them. An employee of the drug store arrived at the store shortly after plaintiff and complained to plaintiff that he smelled a disagreeable odor, and thinking it might be fumes from formaldehyde left open, the employee and plaintiff examined the bottle and found it to be closed. Another employee had gone to the basement a day or two before the explosion and complained that the basement was stuffy and had caused him to have a headache. About three hours after the store had been opened, a violent explosion occurred in the basement of the drug store and the establishment was almost completely demolished. Plaintiff sued the defendant, who held the franchise to distribute gas in Shreveport, Louisiana, for damages. A jury rendered a verdict in favor of plaintiff, which was amended on appeal by reducing the award, but in all other respects, it was affirmed. The Court of Appeal, in reviewing the record, found that there had been only two causes assigned for this explosion. (One of these was the accumulation of natural gas in the basement. The other being sewer gas accumulated in sufficient quantities in the- *125 basement to cause an explosion.) The court concluded that the explosion had been caused by the natural gas coming from defendant’s gas main and that the proximate cause of the accident was the negligence of the improperly fitting service tee into the gas main, allowing the gas to escape into the basement of the building, causing the explosion.
In the case of Feely v. National Packing Co., supra, the defendants were charged with negligence resulting in an explosion. One of them was charged with permitting ammonia fumes to escape, which, it was charged, caused the explosion. The other defendant was charged with permitting pintsch gas to escape. After the explosion, a leak was found in the pintsch gas line under the sidewalk, and above this leak was a six-inch drain from the cooling room, which drain had a hole in it. The gas pipe was encased in cement, and additionally, in wooden boxing. The defendant company contended that it was improbable that the gas penetrated through the encasements and through packed earth fo.r nine to twenty-four inches, and reached the hole in the drain pipe. The district court held the defendant gas company responsible for the explosion. This ruling was affirmed on appeal; the court finding that the explosion could not have come from the ammonia fumes, and that in view of the absence of all other sources from which it could have come other than the pintsch gas, they affirmed the ruling of the district court. The evidence disclosed that several of the witnesses at the trial testified that the gas had the odor of pintsch gas.
The case of Wolff v. Shreveport Gas, Electric Light & Power Co., supra, involved an explosion resulting from a leaking gas pipe in the basement of a building in the City of Shreveport. As a result of this explosion, a passerby suffered injuries and filed a tort action. After a trial on the merits, there was a verdict in favor of the plaintiff, which was affirmed on appeal. The explosion was held to have resulted from a leaking gas pipe which was thin and covered with rust, which, by the jarring of the floor, might have shaken off, leaving holes through which the gas could escape.
The cases cited by counsel for plaintiff were correctly decided according to the finding of facts in each of them. A summary of these cases reveals that the definite causes of the explosions were found as a matter of fact to have been caused by leaking gas on the premises. The accumulation of gas was held to be the proximate cause of the explosion in each case because of some defect in the installation or deterioration of the gas installations leading to the property.
In the instant case, it cannot be ascertained with any degree of certainty that the explosion resulted from the small gas leak in the gas line of the Town of Breaux Bridge. There was no showing that any of the installations made by the defendant Town to the destroyed premises were defective or in need of repair. The evidence also reveals that two windows in the apartment were opened slightly. This would indicate that even if the escaping gas was blown in the direction of the apartment, not a sufficient amount of gas would enter the premises so as to cause an explosion.
Considering all of the evidence in the case at bar, we are of the opinion that the plaintiff has not established his case with that certainty required by law, and has not shown that the proximate cause of the accident was the. escaping gas from the town gas line. Accordingly, the judgment of the district court is affirmed at appellant’s costs.
Affirmed.