153 So.2d 395

Errol NAQUIN

v.

MARQUETTE CASUALTY COMPANY and
Town of Breaux Bridge, Louisiana.

No. 46326.

April 29, 1963.

Rehearing Denied June 4, 1963.

Willis & Willis, by Earl H. Willis, St. Martinville, for plaintiff and appellant.

Davidson, Meaux, Onebane & Donohoe, Richard C. Meaux, Lafayette, Helm, Simon, Caffery & Duhe, Lawrence Simon, New Iberia, for respondents.

SANDERS, Justice.

This is a tort action. The plaintiff, Errol Naquin, seeks damages against the Town of Breaux Bridge and its liability insurer in the sum of $7,753.00 for the loss of the contents of his apartment, which was destroyed by an explosion and fire. The unfortunate incident occurred on November 11, 1958, at about 4:50 p. m.

The apartment, occupied by Naquin and his wife, was in the rear portion of the Carmen Theater Building, located at the intersection of South Main and Van Buren Streets in the Town of Breaux Bridge. Of brick construction, the apartment area consisted of two floors, or stories.

The petition alleges that the Town of Breaux Bridge owns, operates, and has the exclusive control of the natural gas distribution system in the Town; that a gas line adjacent to the theater building was in disrepair and had been leaking for some time; that the escaping gas entered the apartment and caused an explosion, which destroyed the building and its contents; that the defendant Town was negligent in failing to maintain safe facilities, in failing to properly inspect the gas line, and in failing to make the necessary repairs after it knew or should have known of the leak. In addition, the plaintiff pleads the doctrine of res ipsa loquitur.

In answer to plaintiff's petition, the Town and its insurer jointly filed exceptions of

want of interest, want of capacity, no right of action, and no cause of action. Each defendant also answered plaintiff's petition, generally denying its allegations. In addition, the defendant insurer denied coverage under its policy of insurance.[1]

The district court overruled the exceptions. After trial on the merits, the court rendered judgment in favor of defendants, from which the plaintiff perfected a devolutive appeal. The Court of Appeal affirmed.[2] We granted certiorari to review the judgment of the Court of Appeal.

The Court of Appeal concluded that the evidence did not establish that the escaping gas caused the explosion with that "certainty required by law." We cannot agree with this holding. From our review of the case, it is evident that the court has imposed a higher standard of proof than the law requires on the issue of causal connection. As correctly noted in the dissent in that court, the standard adopted raises an insurmountable barrier to the proof of causation in a civil action.

In the recent case of Perkins v. Texas & New Orleans Railroad Company, 243 La. 829, 147 So.2d 646, we stated:

> "Recognizing that the fact of causation is not susceptible of proof to a mathematical certainty, the law requires only that the evidence show that it was more probable than not that the harm was caused by the tortious conduct of the defendant." [3]

■ Causation may, of course, be proved by circumstantial evidence. In many instances, it can be proved only by such evidence. Taken as a whole, circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean, however, that it must negate all other *possible* causes. Otherwise, the mere identification by the record of another possibility, although not shown to be causally active, would break the chain of causation.[4]

---

1. The defendant insurer formally abandoned the defense of no coverage in the Court of Appeal. It asserts, however, that the limit of liability under its policy for the losses of all claimants in the explosion and fire is $5,000.00.
2. La.App., 143 So.2d 122. One member of the Court dissented from the refusal of a rehearing.
3. See also Harmon v. Richardson, 88 N.H. 312, 188 A. 468; Alling v. Northwestern Bell Telephone Co., 156 Minn. 60, 194 N.W. 313; Prosser, Law of Torts (2nd Ed.) § 44, pp. 222–223.

4. Dixie Drive It Yourself Sys. v. American Beverage Co., 242 La. 471, 137 So. 2d 298; Reynolds v. Texas & P. Ry. Co., 37 La.Ann. 694; Hardwick v. Kansas City Gas Co., 355 Mo. 100, 195 S.W. 2d 504, 166 A.L.R. 556; Paine v. Gamble Stores, 202 Minn. 462, 279 N.W. 257, 116 A.L.R. 407; Shinofield v. Curtis, 245 Iowa 1352, 66 N.W.2d 465, 50 A.L.R. 2d 964; Smith v. Darling & Co., 244 Iowa 133, 56 N.W.2d 47; Betzag v. Gulf Oil Corporation, 298 N.Y. 358, 83 N.E. 2d 833; Prosser, Law of Torts (2nd Ed.) § 44, pp. 222–223.

Mr. and Mrs. Naquin departed from their apartment for an out-of-town visit on the evening of November 10th. As found by the Court of Appeal, two downstairs windows were left partially open, one and one-half to two (1½ to 2) inches. Shortly before the explosion, several pedestrians observed a large natural gas leak in the service pipe, located about eight (8) feet from the apartment.

The defective pipe was introduced in evidence. The leakage came from an irregularly shaped, corrosion hole in the elbow joint of the pipe. The joint also evidences extensive, general corrosion. The main portion of the hole is more than one-half (½) inch in diameter, or about the size of a dime. The defective pipe was from two to three feet underground and carried eleven (11) pounds of pressure. From the leak, the gas line extended along the rear of and parallel to the apartment at the place where the windows were left open. The direction of the wind was from the gas leak toward the apartment.

It is virtually conceded that the explosion was a gas explosion and that it occurred within the apartment. The defendants deny, however, that the gas came from this leak.

The testimony, including that of the Deputy State Fire Marshal, establishes that all of the gas valves in the apartment were closed. The hot water heater on the second floor of the apartment was in operation, but did not explode.

The Deputy State Fire Marshal testified in part:

"Q. So then in some substance, Mr. Fuselier, aside from the question which I asked you concerning our conversation, you cannot say here in this Courtroom that whether this explosion was caused by gas coming from outside or inside of the building.

"A. No, sir. Because I wasn't there and I couldn't say that."

Plaintiff's expert, Charles W. Parish, who had extensive experience in investigating gas explosions, testified that, in his opinion, the gas from the outside leak caused the explosion.

He stated that upon the first release of the gas through a fissure in the pipe, it would follow a path of least resistance, usually along the pipe. Under the pressure of the gas, the escape hole in the pipe would gradually enlarge. The gas would ultimately reach the surface and mix with the air.

In his opinion, the gas entered the apartment through the open windows with the directional air current. There, it came in contact with an ignition agent, and the explosion ensued. The ignition agents include static electricity, electrical devices,

and pilot lights. The evidence discloses that the apartment contained a number of electrical appliances. Ignition agents were present on both the first and second floors. A mixture of only four (4) percent of gas by volume with the air was required to produce the explosion. A four and one-half (4½) foot square box would be sufficiently large to contain all of the gas necessary to have produced the explosion in the apartment.

Defendant's expert, Cecil M. Shilstone, was of the opinion that the explosion was produced by gas but was of the opinion that it probably had not come from the outside. He was unable to identify the source of the gas. He further testified:

> "Now, don't for a minute let me leave the Court to believe that I am saying that what Mr. Parish said could not have happened. I said in my opinion the probability is the exact reverse."

The record is barren of any other *proven* source of escaping gas. While the gas water heater was in operation, the evidence is clear that it did not explode. All valves and gas cocks in the apartment were closed when inspected after the explosion. However, the defendants suggest that an open valve could have been closed by the force of the explosion. Since the realm of possibility is expansive, this may be possible. However, the expert testimony reflects that such an occurrence is highly improbable.

The defendants also point to the presence in the apartment of a pint size can of a liquid gasoline fuel used in miniature airplane motors. This, too, is the mere suggestion of a remote possibility. It is clear that the explosion was caused by a vaporized gas. Moreover, the small can was capped.

The record contains substantial circumstantial evidence, which is fortified by expert testimony, that the gas escaping from the municipal gas system entered the apartment and caused the explosion. In our opinion, the plaintiff has established the causal relation by the standard of proof required by law.[5]

We have noted that the defendants objected to the admission of the evidence that the gas entered the apartment through the windows on the ground that it enlarged the pleadings. Inasmuch as the petition alleges that the gas from this leak entered the apartment and caused the explosion, we find no material enlargement of the pleadings or fatal variance. Hence, the objection is without merit.

Having concluded that the explosion was attributable to the leak in the municipal gas system, we pass to a determination of

---

5. Compare Wolff v. Shreveport Gas, Electric Light & Power Co., 138 La. 743, 70 So. 789, L.R.A.1916D, 1138 and Koch v. Southern Cities Distributing Co., 18 La. App. 664, 138 So. 178.

the negligence vel non of the municipal employees. The plaintiff asserts that the evidence establishes such negligence but he, also, specifically pleads the doctrine of res ipsa loquitur.

In Raphael Brothers v. Cerophyl Laboratories, 211 La. 354, 30 So.2d 116, this Court adopted the following succinct statement of the law pertaining to natural gas:

"Natural gas, because of its highly inflammable and explosive character, is an inherently dangerous instrumentality. Those who handle and distribute it are charged with the duty to exercise that degree of care commensurate with its dangerous character and necessary to protect the public from any foreseeable injury therefrom."

This principle was reiterated in Harris Drilling Co. v. Delafield, 222 La. 416, 62 So.2d 627, wherein we stated:

" * * * Those who handle and distribute a highly inflammable gas are charged with the duty to exercise a degree of care commensurate with its dangerous nature and necessary to protect the public from any foreseeable injury therefrom." [6]

In the instant case, the expert testimony discloses that a leak had existed in the service line for an estimated, minimum period of two months. The leak was discoverable through standard inspection procedures.

When the municipal inspection system is viewed as a whole, as must be done, it is apparent that it lacked the intensity and effectiveness commensurate with the dangerous character of natural gas. Especially is this true as to the service lines, such as the one in the instant case, which lie close to residences and business establishments containing ignition agents. Inspection was restricted to observation unaided by the detection instrument that both experts agreed was standard for such purpose. With this instrument, a service line can be inspected in a matter of minutes. A substantial portion of the inspection procedure consisted of the mere watching for leaks by the meter-reader as he traversed his route to read the gas meters each month. No record was kept of the reported leaks as a means of locating the deteriorated underground pipe.

During the month of September, 1958, twenty-nine (29) percent of the natural gas which entered the distribution system of the Town of Breaux Bridge was lost and unaccounted for. During October, the month preceding the explosion, over fifty

6. See also Jones v. Blossman, 209 La. 530, 25 So.2d 85; Hebert v. Baton Rouge Electric Co., 150 La. 957, 91 So. 406, 25 A.L.R. 245; Kendall v. People's Gas & Fuel Co., La.App., 158 So. 254; Koch v. Southern Cities Distributing Company, 18 La.App. 664, 138 So. 178; and Phillips v. City of Alexandria, 11 La.App. 228, 123 So. 510.

(50) percent of the gas was lost and unaccounted for. These losses represented a drastic increase over prior years, and were known to the municipal authorities prior to the explosion. Under all the circumstances, we conclude that the municipal employees should have known of this leak, have reasonably foreseen harm of the type that did in fact occur, and have taken timely action to replace the defective pipe elbow. In failing to do this, they were negligent. Because of this conclusion, we find it unnecessary to consider the doctrine of res ipsa loquitur.

Because of the disposition of the case on the merits in favor of the defendants, the Court of Appeal did not rule upon the exceptions of no cause of action, want of interest, want of capacity and no right of action filed by the defendants. However, we have found it necessary to review these exceptions.

█ The exception of no cause of action is levelled at the insufficiency of the allegations of the petition. The petition particularizes the negligent acts and omissions on the part of the employees of the defendant Town. We also find that the allegations otherwise set forth a factual basis for the cause of action in tort.

· █ The exceptions of want of interest, want of capacity, and no right of action (all contained in a single pleading) are levelled at the ultimate fact that the plaintiff, Errol Naquin, did not own the movable effects that were destroyed in the apartment. In pleading, the defendants point to the allegations in a suit by one Hector Naquin, not now before the Court, that he owned the movable contents of the *theater building*. The evidence discloses that the plaintiff, Errol Naquin, did own some, if not all, of the movable effects in the apartment. It is apparent that allegations of the other petition, which of course must yield to the evidence, refer to the contents of the theater proper and not to the apartment.

We conclude that the exceptions are without merit.

█ It has been the practice of this Court to remand cases to the Court of Appeal to fix damages when that court has not passed upon the issue. See Felt v. Price, 240 La. 966, 126 So.2d 330, and the cases therein cited. Upon remand, it will, perhaps, also be necessary to fix the limit of liability of Marquette Casualty Company under its insurance policy.

For the reasons assigned, the judgment of the Court of Appeal, affirming the judgment of the district court, is reversed and set aside. Judgment is rendered in favor of the plaintiff, against the defendants in such sum as may hereafter be fixed; and the case is remanded to the Court of Appeal, Third Circuit, for the assessment of damages and the fixing of the solidary liability of Marquette Casualty Company

according to law. All costs of court are to be paid by the defendants.

HAMITER, J., dissents, being of the opinion that the judgment of the Court of Appeal is correct.

HAWTHORNE, J., dissents.

153 So.2d 400