MORIAL, Judge.
Plaintiff Martin David Ledet (Ledet) sued defendants Hibernia National Bank, (Hibernia) its workmen’s compensation insurer, Employer’s Liability Assurance Corporation, Ltd., The Le Febure Corporation (Le Febure), its insurer The Traveler’s Insurance Company (Travelers) and The Jene-vein’s Transfer and Storage Company, Inc. (Jenevein) for damages for injuries sustained on August 28, 1972 while employed as a clerk for Hibernia.
Immediately before the accident plaintiff was in a stooped position searching for a cancelled check in the bottom cabinet of a three tier check filing cabinet located in the bookkeeping department of the Hibernia when the cabinet tilted forward and fell pinning him to the floor. Plaintiff received an eye injury, a laceration of his elbow and a compression fracture of the L-l vertebra.
Hibernia purchased the cabinets which were manufactured by Amisbarrow Manufacturing Company in July 1968. Jenevein was hired by Le Febure to deliver and install the cabinet on Hibernia’s premises.
*54 Plaintiff alleged that the cabinet was installed in a faulty and negligent manner by Jenevein who was acting as an agent of Le Febure. He contended that a bolt was missing between the tiers.
Travelers denied any negligence on the part of its insured Le Febure. It asserted plaintiff’s contributory negligence and third partied defendant Jenevein claiming its faulty installation was the proximate cause of the accident.
Hibernia filed an exception of no cause of action claiming they were only liable for workmen’s compensation benefits and were dismissed from the suit on that basis. Commercial Union filed an intervention for reimbursement of the workmen’s compensation paid to plaintiff. The parties stipulated before trial that Commercial Union had paid compensation benefits to plaintiff in the amount of $4,818.35.
The district court awarded plaintiff damages of $30,000.00 against Jenevein, dismissed Le Febure and Travelers awarded Commercial Union $4,818.35. No reasons for judgment were given by the district court.
Jenevein appeals claiming the judgment was contrary to the law and fact. Plaintiff, in answer to the appeal, seeks an increase. We affirm.
The issues before the court on appeal are: (1) whether or not plaintiff proved by a preponderance of the evidence that defendant Jenevein failed to replace the bolts in reassembling the cabinet; (2) if negligence was proven, did the trial judge abuse his discretion in awarding plaintiff $30,000.00 in damages; and (3) whether or not the trial judge erred in failing to admit plaintiff’s deposition into evidence for the purpose of impeachment.
Each cabinet consists of a base eleven inches high resting on the floor and three tiers, each of which is sixteen inches high, and are stacked on top of each other. The tiers are fastened together by one bolt on each side between each tier and two dowel pins on each side between each tier. The bolts are located on the side of each tier about twelve to sixteen inches from the front of the cabinet which is less than half of the depth of the cabinet. There are no bolts fastening the tiers together in the rear of the cabinet. Each tier weighs between 400 and 500 pounds and the entire cabinet weighs 1,400 pounds.
The cabinets were shipped and arrived in New Orleans bolted together. They were to be installed on Hibernia’s mezzanine floor. Because of their weight and to get them through the elevator and mezzanine doors it was necessary to disassemble each cabinet. Jenevein contends that plaintiff failed to introduce any evidence to support a finding that he failed to replace the bolts in the cabinet tiers. He testified that he unbolted only the top tier and left the two tiers bolted together. The testimony and pictures introduced show the top and middle tiers separated from the bottom tier. Jenevein explained that the manner in which he disassembled the cabinet was the best way to distribute the weight of the cabinet in light of the number of helpers he had with him.
Jenevein testified positively that he had replaced the side bolts attaching each tier. He admitted to having left out rear bolts in cases where they could not be reached without difficulty. Later testimony confirmed that the Hibernia units did not contain openings for the placement of rear bolts.
Jenevein attributes the accident to the contributory negligence of plaintiff. He argues that Ledet pulled out all or most of the drawers which were filled with checks and that the weight of the drawers caused the cabinet to fall forward.
Ledet argues that the appellate court must give great weight to the findings of the trial judge. He relies on the testimony of witnesses who stated that they surveyed the area after the accident and found no loose bolts. They also rely on the testimony of the Le Febure serviceman who repaired the cabinet. He stated that he had found only one loose bolt in the channel of the bottom tier. He also discovered that bolts were missing in the standing units. Ledet also points out the testimony of the bank *55 manager that the cabinets had not been moved or tampered with in the four years between their installation and the accident.
We first address ourselves to the issue of the failure of the district court to admit plaintiff’s deposition for the purpose of impeachment. LSA-C.C.P. Article 1428 provides that the deposition of a party or his representative may be used by an adverse party for any purpose. Accordingly, the district court erred in not admitting plaintiff’s deposition into evidence for impeachment of his testimony.
We conclude that plaintiff was not contributorily negligent. The testimony of the witnesses as to the number of drawers open immediately preceding the accident varied from a few to almost all of the drawers. The testimony given on this particular factual issue was contradictory and therefore a credibility question arose. We are compelled to affirm the findings of the trial judge reconciling that conflict in plaintiff’s favor. Apparently, the trial judge found that the number of drawers left open by plaintiff was not the proximate cause of the accident.
The remaining evidence as to the proximate cause of the cabinet falling is circumstantial in nature. It is not an issue of credibility but rather one of sufficiency and preponderance of the evidence.
Jenevein testified positively that all bolts were replaced at the time the cabinets were reassembled. Mr. Herbst, the Le Febure representative, testified that he saw Jene-vein replacing the bolts and that he assumed all had been replaced. Mr. Zigler, the bank manager who was present saw them assembling the unit and also assumed they had replaced the bolts.
However, a number of employees and Mr. Herbst all testified that they had surveyed the area after the accident and had found no loose bolts. Mr. Seigel, the Le Febure serviceman who came to repair the cabinets the day after the accident, testified that he could only find one bolt in the bottom tier of the broken unit and had to replace all the others with new bolts. He also checked the standing units and found two or three missing bolts.
It is possible that the bolts in the broken unit were jarred loose upon impact with the desk. They could have rolled under a desk or other furniture and remained undiscovered. Also, the top tier had been moved by bank employees after the accident. This could have resulted in the loss of some bolts. However, it is very difficult to justify the missing bolts in the standing units. Causation may, of course, be proved by circumstantial evidence. Though a plaintiff relying on circumstantial evidence must exclude other reasonable hypothesis with a fair amount of certainty, it is not required, however, that a plaintiff must negate all other possible causes. Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963).
From the evidence presented we conclude that a substantial number of bolts had not been replaced by Jenevein and the absence of the bolts securing the tiers was the proximate cause of the cabinet falling and causing plaintiff’s injury.
In our opinion, the trial judge did not abuse his discretion in awarding plaintiff $30,000.00. Plaintiff was hospitalized after the accident for nine days. He was fitted for a brace which he wore continually until October 12, 1972. After that he wore the brace off and on until November 17, 1972. He was discharged by the treating physician in April 1973. Dr. Kerr testified that at that time plaintiff was free of pain and had full range of motion.
All of the doctors who saw plaintiff found he had a seventy percent compression fracture of the L-l vertebra. He has sustained a 20% disability to his body as a whole. Dr. Saer, an orthopedic surgeon who saw plaintiff in May 1973 and February 1975 stated that plaintiff still felt pain in his mid-back and that he had developed traumatic arthritis. Both doctors agreed that a surgical fusion of the vertebra might be necessary in the future. Plaintiff can no longer lift heavy objects and must act cautiously in engaging in other activities. Pri- *56 or to the accident plaintiff had been very involved in sports activities. Ledet still suffers pain intermittently. He has been able to return to work and to engage cautiously in sporting activities.
In Dolan v. New Orleans Public Service, Inc., 317 So.2d 688 (La.App. 4 Cir.1975). We affirmed an award of $26,000.00 to a plaintiff who suffered a fifty percent compression fracture of the L-1 vertebra. The court commented that the award was high for that type of injury, but found no abuse of discretion relying on Gaspard v. LeMaire, 245 La. 239, 158 So.2d 149 (1963). See Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1977).
For the foregoing reasons the judgment of the district court is affirmed.

AFFIRMED.