CUTRER, Judge.
This appeal arises out of a subrogation suit for property damages incurred as a result of a fire which destroyed a travel trailer owned by Michael Barner. Bankers & Shippers Insurance Company of New York (Bankers) paid Barner for the fire loss under their contract of insurance. Barner subrogated his claim to Bankers which filed the suit in question.
Bankers sued Holiday Rambler Corporation (Holiday), the manufacturer of the trailer, and Cenia Camping Center, Inc. (Cenia), the seller, for the fire loss. The trial court dismissed the suit as to Cenia. The trial judge found Bankers had proven by a preponderance of the evidence that Holiday had installed a defective copper flare connection leading into the central heating unit of the trailer. The trial judge further found this connection was the most probable cause of the fire which destroyed the trailer. Judgment was rendered in favor of Bankers and against Holiday in the amount of $17,000.00. Holiday appeals. We affirm.
FACTS
On October 13,1978, Michael Barner purchased a thirty-two foot Imperial Limited *1352 Travel Trailer from Cenia. The trailer was manufactured by Holiday. Major appliances in the trailer were operated on either an external electrical hookup or a self-contained L.P. gas system. Gas was carried to each appliance through %" copper tubing and connected to the appliance by flare fittings and brass connectors. Each fitting and connection combination was checked for leaks at Holiday’s plant in Indiana and at Cenla’s sales lot in Alexandria, Louisiana. No gas leaks were found.
The trailer had been parked by Barner near his mother’s home. On May 1, 1979, the trailer was completely destroyed by fire. No one was inside the trailer when the fire started. Barner was a short distance away placing laundry in his mother’s car when his mother spotted smoke coming out of the top of the trailer. After an unsuccessful attempt at controlling the flames with a garden hose, Barner removed the L.P. gas bottles from the front of the trailer to prevent any explosion. The trailer and Barner’s possessions were lost. Bankers paid its policy limits to Barner and was subrogated to Barner’s rights of recovery and brought suit.
Experts appeared for both sides at trial on the merits. The trial court concluded after hearing all of the evidence:
“... plaintiff did produce a preponderance of evidence so as to convince the court that the flare connection leading to the central heating unit was defective, and that this connection most likely caused the fire which destroyed the mobile home.”
The issue presented on appeal is whether the trial judge was clearly wrong in his conclusion that the defective flare caused the fire.
BANKERS’ BURDEN AT TRIAL
The principal issue at trial and the question upon which this decision must rest is whether Bankers established that the flare connection was defective and whether the defect was the most probable cause of the fire. A plaintiff suing a manufacturer on the basis of a claimed injury resulting from a defect in a product has the burden of proving the product was defective and the defect caused plaintiff’s injury. Weber v. Fidelity & Casualty Insurance Co. of N.Y., 259 La. 599, 250 So.2d 754 (1971). A plaintiff is not required to prove any specific act of negligence on the part of the defendant. However, a plaintiff is required to prove a defective product manufactured by defendant caused plaintiff’s loss and the causation must be shown by a preponderance of the evidence. Western Cas. & Sur. Co. v. Adams, 381 So.2d 923 (La.App. 3rd Cir.1980). A preponderance of the evidence exists when the evidence, direct or circumstantial, taken as a whole shows that the fact of causation sought to be proved is more probable than not. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971).
While the existence of a defect is most often proven by direct evidence, causation may be proven by circumstantial evidence. Taken as a whole, circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean the evidence must negate all other possible causes. It suffices if the circumstantial proof excludes other reasonable hypotheses only with a fair amount of certainty, so that it will be more probable than not that the harm was caused by the tortious conduct of the defendant. Otherwise, the mere identification in the record of any other possible cause, even those not shown to be causally related, would break the chain of causation. Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621 (1972); Naquin v. Marquette Casualty Company, 244 La. 569, 153 So.2d 395 (1963).
SCOPE OF REVIEW
The existence of a defect and the question of causation are both factual determinations. The appeal court should not disturb the findings of the trier of fact in *1353 the absence of manifest error. Canter v. Koehring Company, 283 So.2d 716 (La.1973). Manifest error means clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979).
"... Where, as here, there is conflict in testimony as to the cause of the fire, reasonable evaluations of credibility and reasonable inferences of fact by the trial court will not be disturbed even though this court may feel other evaluations and inferences are as reasonable."
Cormier v. Foremost Ins. Co., 405 So.2d 610, 612 (La.App. 3rd Cir.1981).
With these principles in mind we will examine the record to determine if the trial court was clearly wrong in its interpretation of the evidence presented.
EXISTENCE OF THE DEFECT
Bankers alleges that the flare connection in the L.P. gas system leading from the gas bottles to the central heating unit of the trailer was defective and this defect caused the fire. For Bankers to be successful in this suit it must prove both the defect and the causal link between the defect and plaintiff’s injury. Five experts appeared at trial. Four of these were of the opinion that the copper tubing which was connected to the central heating unit was insufficiently flared to insure a good seal. The other expert concluded that the flare was sufficient and did not leak.
In the flaring procedure the end of the copper tubing is spread out to match the shape of the bevelled connection which is attached to the appliance; in this case, the central heating unit. All of the major appliances in Barner’s trailer could be operated on L.P. gas and each appliance was attached to the gas system by a flare connection. After the fire all flare connections on the appliances in the trailer (air conditioner, refrigerator, stove top/oven, water heater and central heating unit) were retrieved. Each of the experts agreed, and the trial judge noted that even the untrained eye could tell, that the flared end of the copper tubing which attached to the central heating unit was smaller, or flared less, than any of the other connections to the other appliances.
Holiday’s expert, Professor A.J. McPhate, of Louisiana State University, explained a basic trade-off which was made when any flare is created. The tubing must be spread wide enough to insure sufficient surface contact with its counterpart in the connection but the tubing cannot be spread so much as to weaken its structural integrity. The basic difference, in the expert’s opinion, concerned the sufficiency of the spread of the copper tubing that attached to the central heating unit. This connection was retrieved from the remains of the trailer and was introduced into evidence.
Bankers’ four experts each felt the flare in question was not sufficiently spread. Mr. Harold L. Myers, an expert in mechanical engineering and fire investigations, stated that the flare did not have sufficient “lip” and also that it was not seated on the matching connection when he first examined the debris of the fire. Myers said he would not recommend the use of such a flare with copper tubing because the spread was not large enough to offer either good mechanical stability or a large enough sealing surface.
The evidence of defect and causation tend to overlap to some extent. Myers pointed out that the brass nut which held the copper tubing to the central heating unit was completely melted. This condition, according to Myers, reflected that the fire began at the flare and the brass nut was melted because it was subjected to intense heat as the gas burned at the site of the leak. None of the other brass nuts on any other appliances were melted.
Mr. Robert D. Vincent, an engineer and vice-president of Suburban Manufacturing Company, the company which produced the central heating unit in Barner’s trailer, said the flare should have been larger. A.J. Constance, a licensed plumber with 30 years’ *1354 experience, stated the flare was not flared enough and that he would not knowingly use such a flare in his work. Mrs. Gladys Stubbs, the mother of Barner, was accepted by the trial court as an expert on flares based on her years of practical experience with copper tubing connections. She too stated the flare was improperly flared.
Contrary to the opinions of these four experts, Holiday’s expert, McPhate, felt the flare was properly flared. McPhate based his belief mainly on the fact that the flare had a diameter of 0.487 inches and this measurement fit within published standards for flare connections. In fact, McPhate was of the opinion that every other flare connection in the trailer was improper because each one had a diameter larger than the published standards specified.
All the connections in the trailer were tested by Holiday or Cenia before delivery to Barner and no leaks were found. However, it must be remembered that this connection was in a travel trailer. The trailer, by its very nature, was designed to be moved from place to place. In fact, Barner had moved the trailer twice since the last leak test was performed by Cenia. Each expert, when asked, indicated vibration could cause a connection to leak which had previously passed a leak test.
We find that the record fully supports the trial judge’s conclusion that the flare connected to the heater was defective.
CAUSATION OF THE HARM
Having determined that Holiday produced a defective product, the next question to be addressed is causation.
The testimony of Myers was very persuasive in determining the causal link between the defective condition and the fire which caused the harm to Barner. Myers is an expert in fire investigation, having examined more than one hundred trailer fires, and he is the only expert who examined the remains of the trailer. Myers’ investigation was basically a two-step procedure; first, determining the origin of the fire and, second, looking for a cause of the fire in the area of the origin.
The origin of the fire was determined by the pattern of the fire damage. The point of origin was fixed near the central heating unit because wooden structures around the furnace were completely consumed by the fire while the same pieces of wood were less burned farther away from the heating unit. Once the general area of origin was determined, possible causes within the area were examined.
Myers examined the electrical system of the trailer and could find no probable cause of the fire by electrical means. He also looked for, but did not find, any evidence of arson. Myers concluded that the origin of the fire was at the heater connection and the fire was caused by the defective flare allowing gas to escape and become ignited.
Vincent testified (by deposition) that he thought a leak at the flare was the most probable cause of the fire. Fire investigation, particularly when one of his companies’ products may be involved, is part of Vincent’s regular duties. Vincent’s testimony carries with it added credibility because being adverse to Holiday also makes the testimony adverse to the pecuniary interests of Suburban, Vincent’s employer.
McPhate, the defendant’s expert, never visited the scene of the fire. In fact, this was only the second trailer fire McPhate had ever investigated. McPhate was asked by the trial judge for his opinion as to the source of the fire. None of the alternatives mentioned by McPhate refuted the evidence of the source of the fire being a gas leak at the flare. McPhate stated the fire, in his opinion, started somewhere else.
In a products liability case the plaintiff must show not only a defective product of the defendant but also the causal link between the defect and the plaintiffs harm. Bankers in this case has shown both the defect in the flare and the link between the defect and the cause of the fire by a pre *1355 ponderance of the evidence. The trial judge’s conclusion in this regard is correct and the judgment shall be affirmed.
We hold that there has been no showing of error or abuse of discretion on the part of the trial court.
For these reasons, the judgment of the trial court is. affirmed. All costs of this appeal are to be assessed against defendant-appellee, Holiday Rambler Corporation.
AFFIRMED.