CULPEPPER, Judge.
Plaintiff seeks damages for loss in yield of his rice crop allegedly caused by use of a pre-emergent herbicide known as “Mo-down.” The defendants are Mobil Chemical Corporation, the manufacturer of Modown, Occidental Chemical Company, the distributor of the Modown, and G & H Seed Company and Liq-Quik Fertilizer, the retail dealer who sold the herbicide to the plaintiff. From a judgment dismissing his suit against all defendants, plaintiff appeals.
The issue on appeal is whether the trial court erred in holding that the plaintiff failed to prove by a preponderance of the evidence that the product of the defendant was defective, or that he suffered a loss in yield.
FACTS
The trial court ruling was accompanied by a clear and concise statement of facts which a careful reading of the record convinces us is accurate and complete. We therefore adopt the following pertinent portion of the trial judge’s findings of fact:
“On or about March 12, 1977, plaintiff dry-planted rice on a particular 40-acre tract of farmland in Acadia parish. This tract had been planted in soybean in 1978 but had lain fallow for some years before that. That same day or the following day G & H Seed and/or Liq-Quick (sic) Fertilizer Company sold Modown to plaintiff, mixed the product and applied it to the field in question as a pre-emergent herbicide.
“The uncontroverted testimony of Mr. Baronet shows that he then waited approximately two weeks and that since there had been no rain he, following the instructions of G & H Seed and/or Liq-Quick, flushed the forty-acre tract to activate the Modown. Mr. Baronet further testified that at that time his rice looked beautiful. Two weeks later when Mr. Baronet flooded his field there was still no obvious problem with his crop.
“Shortly after this permanent flooding took place the area experienced a severe rain storm totaling eight inches. Around the time of the fifty (sic) week after planting, plaintiff began to notice problems with his rice. In the lowest areas of this field the rice plants began to die. Mr. Baronet complained about this problem to Mobil and its distributor and they investigated. Upon instructions from Mr. Zaunbrecher of G & H and Liq-Quick, plaintiff then drained his field and the rice plants began a process of recovery. Samples were taken and analyzed and the results show that there was a Vioth zinc deficiency on this particular field.”
Extensive expert testimony was adduced at the trial on the merits by both parties. It was testified that Modown had never been known to cause such damage as that alleged here. There was also testimony with regard to other possible causes of the damage to the plaintiff’s rice crop.
The trial court held that the plaintiff failed to prove that the Modown in question was defective or that it caused injury to the plaintiff’s rice. He further concluded that, even if the Modown was defective, the plaintiff failed to prove that he suffered damages as a result of its application.
DEFECTIVE PRODUCT
A manufacturer of a product which involves a risk of injury to the user is liable to any person who, without fault on his part, sustains an injury caused by defect in the design, composition or manufacture of an article, if the injury might reasonably have been anticipated. However, the burden is upon the plaintiff claiming injury to prove that the product is defective, i.e., unreasonably dangerous to normal use, and that the plaintiff’s injuries were caused by reason of the defect. Hebert v. Brazzel, 403 So.2d 1242 (La.1981); Weber v. Fidelity & Casualty Insurance Company of N.Y., 259 La. 599, 250 So.2d 754 (1971).
In Weber, supra, the court also stated plaintiff’s burden of proof of causation as follows:
*565 “In this civil case, the plaintiffs’ burden is to prove causation by a preponderance of the evidence. This burden may be met either by direct or, as in this case, by circumstantial evidence. Jordan v. Travelers Insurance Co., 257 La. 995,245 So.2d 151 (1971); Naquin v. Marquette Cas. Co., 244 La. 569, 153 So.2d 395 (1963).
“As we stated in the latter decision, Í53 So.2d 397: ‘Taken as a whole, circumstantial evidence must exclude other reasonable hypotheses with a fair amount of certainty. This does not mean, however, that it must negate all other possible causes. Otherwise, the mere identification by the record of another possibility, although not shown to be causally active, would break the chain of causation.’ ”
The plaintiff argues that he sufficiently proved the Modown was defective under the standard and rationale of Weber, supra. Weber involved an animal dip which contained arsenic. The sons of the plaintiff used the dip to spray their cattle and the cattle all died. The courts, both lower and appellate, accepted as truthful the testimony of the plaintiffs that they had used the dip in accordance with the directions of the manufacturer. Then the court held:
“Under these circumstances, the most reasonable hypothesis for the cause of the cattle’s death is an excessive amount of arsenic in the portion of the dip received from the manufacturer; for otherwise the cattle would not have died.”
In the instant case, however, even the expert witnesses called by the plaintiff, Raymond Dilly and Robert Verret, Acadia Parish County agents, testified they did not know what had caused the problem with the plaintiff’s rice and could not rule out other causes than Modown, including zinc deficiency, as responsible for the damage. They also both agreed with the defendants that zinc deficiency symptoms often did not appear until after the permanent flooding of the rice. Steve Zaunbrecher of C & H, and Gregory Fuselier, a salesman for Mobil, both testified they had never known Mo-down to be the cause of damage such as that alleged by the plaintiff, as did the plaintiff’s expert witnesses. Raymond Dre-ger further testified that the rice plants did not show any of the typical symptoms of an injury caused by Modown.
Defendants’ expert, Dr. Emery Ford Eas-tin, testified that the half-life of Modown is somewhere between 7 to 12 days, and after a 4 to 7-week period there is not enough Modown left even for effective weed control. He therefore was of the opinion that Modown could not be a factor in the damaged areas since there would not be enough Modown left after the permanent flood to cause injury to the rice. He also testified that, due to Modown’s low water solubility, there is no way, other than physical movement of the soil, that the Modown could have moved to and become concentrated in the affécted area.
The trial court.found there were other reasonable hypotheses which could explain the injury, such as zinc deficiency compounded by water stress. Moreover, he found the preponderance of the evidence established that Modown could not have caused the injury to the rice after such a long period.
In reviewing findings of fact, an appellate court may not disturb a determination by the trial court unless it is clearly wrong, considering all of the evidence. Arceneaux v. Domingue, 365 So.2d 1330 (La.1979). We have carefully reviewed the entire record, and we find no clear error.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the plaintiff-appellant.
AFFIRMED.