574 So.2d 505 (1991)
VALIANT INSURANCE COMPANY and American General Fire & Casualty Company Plaintiffs-Appellees,
v.
CITY OF LAFAYETTE Defendant-Appellant.
No. 89-888.
Court of Appeal of Louisiana, Third Circuit.
February 6, 1991.
*506 Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell, Roger E. Ishee, Lafayette, for plaintiffs-appellees.
Voorhies & Labbe, Michael D. Hebert, Lafayette, for defendant-appellant.
Before DOMENGEAUX, C.J., and LABORDE, and YELVERTON, JJ.
LABORDE, Judge.
This suit arises out of a fire occurring in the early morning hours of August 16, 1985, at the residence of Henry and Caritta Boutte. The Bouttes live at 517 East Demanade Drive in Lafayette, Louisiana. Plaintiffs, Valiant Insurance Company and American General Fire and Casualty Company, as subrogees of the Bouttes, instituted this action to recover damages caused by the fire from defendant, City of Lafayette (City). Judgment on the merits was rendered by the trial court in favor of *507 plaintiffs for the amount of $73,365.42. The City now appeals. We affirm.
On August 15, 1985, Hurricane Danny was slowly moving out of the Lafayette area, although the City was still experiencing some intermittent storms. The East Demanade Drive area, where the Bouttes' house is located had been without electricity for an extended period during the hurricane. On the morning of the 15th, the City attempted to restore power to Demanade Drive. The attempt was not wholly successful, for, approximately an hour later, all three fuses at the Pinhook Road and River Road substation blew. As a result, City engineers, Ronald Gary and James Richard, were instructed to canvass the Demanade Drive area for down lines. Mr. Gary testified at trial that he discovered no primary lines down in the Demanade Drive area during his inspection.
The testimony of James Daigle contradicted that of Mr. Gary. Mr. Daigle resides at 512 Demanade Drive. Sometime during the morning of the 15th, Mr. Daigle noted that a primary line strung between 421 Demanade Drive and 517 Demanade Drive was down. Mr. Daigle testified that the line had fallen over a gas stub in front of the home located at 421 Demanade Drive. He further explained to the court that despite the fact that City utility personnel passed up and down the road several times, the line remained down all day.
In the early morning hours of the next day, August 16, 1985, Mr. Daigle, was in his front yard, when he came across an individual who represented that he was with the City. This individual informed Mr. Daigle that the City was about to restore power to the Demanade Drive area. At that time, Mr. Daigle pointed out the down primary line. The individual then tried to notify someone from the City on his walkie-talkie but was unsuccessful. Mr. Daigle testified that the unidentified individual then left and was not seen again.
Richard Chappuis was in front of his house on 417 Demanade Drive when the City restored power. Mr. Chappuis testified that he was walking down the street with an unidentified employee of the City utility department, when he noticed the down primary line located on 421 Demanade Drive, i.e. the same line that Mr. Daigle had observed earlier. Mr. Chappuis stated that the line was flashing and sparking which caused several bushes to ignite around the gas stub. As he and the City employee made their way down Demanade Drive, they noticed that the Bouttes' house was on fire. The City employee radioed the fire department which responded immediately and ultimately extinguished the blaze.
The testimony of the City utility department personnel who repaired the line that was down revealed that the 7,000 volt primary line was completely severed into two pieces. Their testimony also established that part of the line extended down from the utility pole into the bushes which surrounded the gas stub.
The City argues that plaintiffs have failed to meet their burden of proving that it is liable for the fire at the Bouttes' residence. A supplier of electricity, such as the City in this case, is required to recognize that its conduct involves a risk of causing harm to another if a reasonable person would do so while exercising such attention, perception of the circumstances, memory, knowledge of other pertinent matters, intelligence and judgment as a reasonable person would have. If the electric utility has in fact more than a minimum of these qualities, it is required to exercise these superior qualities in a manner reasonable under the circumstances. Levi v. Southwest Louisiana Electric Membership Cooperative, 542 So.2d 1081 (La.1989). Electric utilities who utilize and maintain high power lines are required to exercise the utmost care to reduce hazards to life as far as practicable. Vincent v. Beauregard Electric Cooperative, Inc., 536 So.2d 798 (La.App. 3d Cir.1988), writ denied, 546 So.2d 164 (La.1989). However, an electric utility is not required to guard against situations which cannot be reasonably expected or contemplated. Vincent, supra. In order for a violation or breach of duty to constitute negligence, it must be shown that the utility had knowledge, actual or *508 constructive, of the danger and that it failed to correct the same or warn of the danger. Horton v. Valley Electric Membership Corp., 461 So.2d 375 (La.App. 2d Cir.1984). A utility will be considered to have constructive knowledge of an electrical hazard which has existed for a period of time which would reasonably permit discovery had the utility adequately performed its duties. Levi supra.
After careful consideration of the record in this case, we determine that the City had the responsibility not to re-energize the line when it knew or should have known that the down primary wire on Demanade Drive would cause an immediate danger. Mr. Daigle testified positively that the line had been down since the morning of the day before the fire occurred. He also stated that he informed a City employee that the line was down and that that individual attempted to contact the utility before it re-energized the system. While we realize that the City engineer, Ronald Gary, testified that there were no lines discovered to be down during his inspection on the afternoon of the 15th, the trial court obviously chose to believe Mr. Daigle's testimony as to the fact that the line was down all day and as to the fact that a City employee had knowledge of the dangerous condition prior to re-energization. A reviewing court may not set aside the lower court's finding of fact in the absence of manifest error and where there is a conflict in testimony reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed on review, even though the reviewing court may feel that its own evaluations and inferences are as reasonable. When findings are based on determinations regarding the credibility of witnesses, the manifest error standard demands great deference to the trier of fact's findings; for only the fact finder can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. Rosell v. ESCO, 549 So.2d 840 (La.1989); Canter v. Koehring, 283 So.2d 716 (La.1973). We find no manifest error in the trial court's finding that defendant had knowledge that its down primary wire would create an immediate danger if the system was re-energized.
Having determined that the City owed a duty to the Bouttes not to re-energize the system, we are now confronted with the issue of whether this re-energization caused the fire which is the subject of this lawsuit. The City contends that plaintiffs failed to prove either by direct or circumstantial evidence that the flashing and sparking primary line caused the fire at the Bouttes' residence. Defendants also argue that the doctrine of res ipsa loquitur is not applicable to this case.
Causation must be proved by a preponderance of the evidence. This burden may be met either by direct or circumstantial evidence. Jordan v. Travelers Insurance Co., 257 La. 995, 245 So.2d 151 (1971). Circumstantial evidence need not negate all other possible causes of injury or damage; it suffices if the proof excludes other reasonable hypotheses only with a fair amount of certainty. Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963). In fire cases, where the origin of a fire cannot be proved with exactness and the plaintiff presents sufficient evidence, either direct or circumstantial, excluding all other reasonable hypotheses except the defendant's fault, then the burden shifts to the defendant to prove otherwise. Lemon v. Fein, 467 So.2d 548 (La.App. 4th Cir.), writ denied, 472 So.2d 594 (La.1985).
There was no direct evidence of what caused the fire at the Bouttes' residence. We find that the circumstantial evidence presented by plaintiff excluded all other reasonable hypotheses except the City's fault by a fair amount of certainty. We further determine that City's explanation of the cause of the fire was not supported by the record and therefore, did not serve to exculpate them from fault.
Plaintiff presented the testimony of its expert, Fred H. Vanderbrook, Jr., to establish that the City caused the fire. Mr. Vanderbrook stated that his inspection of Bouttes' home revealed that the fire started in the attic area between the master bedroom and the master bath. He stated *509 that in that area there is a copper gas tube which supplies a wall heater in the master bathroom. That copper gas tube runs adjacent to the sewer vent stack. Mr. Vanderbrook informed the court that the gas line leading into the Bouttes' house became energized, which caused arcing between the copper gas pipe and the vent stack. The arcing between the copper pipe and the vent stack ignited gas which was escaping from a hole in the copper tube. When asked whether he believed that the line which was hanging above the gas stub in front of 421 Demanade Drive was the most likely cause of the fire, Mr. Vanderbrook answered in the affirmative. Mr. Vanderbrook further explained his examination of the stub-in revealed findings which were consistent with the theory that the gas line become energized by the down primary line. Finally, when asked why other houses on the gas line did not experience fires also, Mr. Vanderbrook replied that the way in which the gas pipe and vent stack were set up in the Bouttes' home provided the right set of circumstances for the fire to occur.
The City also presented the court with expert testimony in an attempt to rebut plaintiffs' expert's testimony and offer an alternative theory on the cause of the fire. The City's expert, Harold Meyers, first stated that he did not agree with Mr. Vanderbrook's theory that the fire was caused by the gas line becoming energized. Mr. Meyers told the court that if the gas line was energized he would have expected to find damage to the gas appliances in the Bouttes' home, but no appliances were damaged. He also pointed out that the gas meter on the house is fitted with an isolation fitting which is designed to isolate the pipeline system from the house system. He also related that it was his belief that since the gas line is buried and since the ground was wet on that evening, any electrical charge in the gas line would have gone to ground. Mr. Meyers further opined that it was unlikely that the voltage through the line would have been enough to cause arcing unless the gas line and vent stack were practically touching, although, he conceded that he did not know how close they actually were. Mr. Meyers theorized that the fire was caused by lightning striking the house or near the house. He based his theory partly on the fact that an unidentified neighbor told him that she had heard a loud boom prior to the fire, but that she did not know whether it was lightning or not. Mr. Meyers stated that it was his opinion that the lightning strike set up a charge in the vent stack which subsequently led to the fire.
With all due respect to Mr. Meyers, we do not find his theory of a lightning strike to be supported by the record. Witnesses, including both city employees and residents of the neighborhood who were in the vicinity of Demanade Drive before the fire, testified that there was no lightning in that area. Mr. Chappuis said that he heard a loud boom right before the fire, but that this was caused by a transformer explosion. This explosion could account for the loud noise that the unidentified neighbor heard. Additionally, plaintiffs' expert Mr. Vanderbrook, informed the court that a lightning strike is a very significant event and that individuals in the area would surely know if one took place.
The City also suggests that since the wires in the attic were destroyed in the fire, it is impossible to rule out faulty wiring as a source of ignition for the fire. The City offered no proof that the defective wiring was a cause of the fire, and plaintiffs' expert stated conclusively that the wiring of the house was not a cause of the fire.
A review of the expert and lay testimony in this case indicates to this court that the trial court was not in error in finding that the plaintiffs proved that the down primary wire was the cause of the Bouttes' fire. We conclude that the City is solely liable for the damage caused by the fire.
Defendant also contends that the trial court erred in admitting into evidence, over defendant's objection, the hearsay statement of plaintiffs' witness, Mr. Daigle, as to what the unidentified City employee told him shortly before the electric system was re-energized. The following *510 took place during counsel for plaintiffs' direct examination of Mr. Daigle:
"Q. Now, the afternoon of August the 15th wasDid you see any City utility personnel anywhere in the neighborhood?
A. Yes, sir. They had trucks in the area all that day.
Q. Did any pass your home?
A. Severalseveral times.
Q. When was the first occasion that you had actually any verbal contact with City employees?
A. Well, they kept passing in front of my house many, many times. The trucks kept going back and forth. And several hours beforethat was that morning when I noticed the electrical wire was down. But just before they got ready to turn on the electricity, they had one guy from the City came through and, um, I got into a conversation with him and asked him about when they might have the electricity turned back on and he mentioned
MR. HEBERT: Objection. Hearsay.
A.that that was the reason why these
THE COURT: Wait. Just a minute.
MR. ISHEE: Your Honor, we would say it's an admission against interest, City personnel, the statement made by the City.
THE COURT: Let me ask you something. This is an employee of the City?
THE WITNESS: Yes, sir.
THE COURT: Objection overruled. I'll allow it."
The City asserts that plaintiff never laid the proper foundation for the admission of this statement as an admission against interest. Under LSA-C.E. art. 801 a statement in not hearsay if:

* * * * * *
"(3) ... The statement is offered against a party, and the statement is:
(a) A statement by an agent or employee of the party against whom it is offered, concerning a matter within the scope of his agency or employment, made during the existence of the relationship;"

* * * * * *
Defendant argues that plaintiff failed to prove that the individual Mr. Daigle spoke with was a City employee or that the statements he made were concerning a matter within the scope of his employment. We disagree. Mr. Daigle positively identified the individual as a City employee. Mr. Daigle explained that he has worked with the City on job sites, as he is in the heating and air conditioning business, and that he has seen this individual before in his capacity as a City employee. Mr. Daigle testified that this individual informed him on the night before the fire that he was responsible for making sure everything was secure before the power was turned back on. We find that Mr. Daigle's identification of this individual was sufficient to establish his employment with the City and that the statements he made were within the scope of his employment. The trial judge correctly overruled defendant's hearsay objection.
For the foregoing reasons, the judgment of the trial court is affirmed. Defendant is cast for all costs.
AFFIRMED.
DOMENGEAUX, C.J., concurs. I feel that the proof of the City's knowledge of the downed primary line, actual or constructive, is not impressive, but I am, nevertheless, constrained to concur herein in view of the manifest error rule and the weight to be afforded the findings of the trier of fact.