645 So.2d 685 (1994)
FERRUZZI, U.S.A., INC., et al.,
v.
R.J. TRICON CO., INC., et al.
No. 93-CA-1591.
Court of Appeal of Louisiana, Fourth Circuit.
September 29, 1994.
Rehearing Denied December 13, 1994.
*686 Lawrence J. Ernst, Fred T. Hinrichs, Christovich & Kearney, New Orleans, for *687 plaintiffs-appellants Mississippi River Grain, Inc. and Ranger Ins. Co.
William W. Messersmith, III, Judy L. Burnthorn, Deutsch, Kerrigan & Stiles, New Orleans, for appellant Harbor Const. Co., Inc.
Nelson W. Wagar, III, Hailey, McNamara, Hall, Larmann & Papale, Metairie, for defendant-appellee Essmueller, Inc.
Paul V. Cassisa, Sr., Carl J. Giffin, Jr., Bernard, Cassisa & Elliott, Metairie, for defendant-appellee Browning Mfg. Div. of Emerson Elec. Co.
Edward A. Rodrigue, Jr., Robert I. Baudouin, Boggs, Loehn & Rodrigue, New Orleans, for defendant-appellee R.J. Tricon Co., Inc.
Before KLEES, CIACCIO and ARMSTRONG, JJ.
KLEES, Judge.
Plaintiff Mississippi River Grain, Inc. appeals the trial court's judgment finding no liability on the part of defendants for property damage and lost profits caused by an explosion and fire which erupted at plaintiff's grain elevator on August 16, 1989. We affirm.
Plaintiff brought a products liability claim based on the theory that a defect in the elevator's head pulley assembly caused a spark, which ignited grain dust collected in the silo. The original defendants were R.J. Tricon, the sales engineer for installation of the elevator; Harbor Construction Company ["Harbor"], which actually erected the elevator; Essmueller Company, which designed and manufactured the elevator; and Browning Manufacturing Division of Emerson Electric Company ["Browning"], which manufactured a bushing in the head pulley assembly of the elevator. Both R.J. Tricon and Harbor filed cross claims against Browning for indemnity and contribution. The accident allegedly happened when a pulley within the head drive assembly unit moved along its shaft and came into contact with the casing of the elevator leg, created friction and producing heat.
Prior to trial, the district court granted the motion for summary judgment brought by defendant R.J. Tricon, and dismissed it from the suit. Trial was held October 27-30, 1992, without a jury. At the conclusion of the plaintiff's case, the trial court granted motions for the involuntary dismissal of Browning and Harbor pursuant to Louisiana Code of Civil Procedure article 1672. The trial proceeded with the presentation of evidence by Esmueller, the sole remaining defendant.
On December 30, 1992, the trial court rendered judgment in favor of Essmueller. In extensive written Reasons for Judgment, the trial judge stated that the evidence presented had convinced him unquestionably that the head pulley had moved along its shaft and had come into contact with the housing, triggering the explosion. However, the trial judge ruled in favor of Essmueller because the plaintiff had not met its burden of proving that the movement of the pulley was caused by the fault of Essmueller.
On appeal, plaintiff contends the trial court erred in finding no liability on the part of Essmueller. Additionally, plaintiff argues that the trial court erred in dismissing Browning and Harbor. All three defendants have opposed the appeal and Harbor has also asserted that, in the event its dismissal is reversed, its cross claim against R.J. Tricon should be reinstated. After reviewing the record, we find no manifest error in the judgment of the trial court.

Dismissal of Harbor
The record clearly supports the trial court's involuntary dismissal of Harbor. Harbor was awarded the construction contract to erect the Essmueller bucket elevator at the Mississippi River Grain site. Harbor purchased the elevator from R.J. Tricon, who had ordered it from Essmueller. Harbor received the elevator with its head pulley mechanism fully assembled. It received no instructions regarding the recommended torquing levels or the need to torque or retorque the capscrews in the head pulley. The evidence at trial showed undisputably that *688 torquing was not considered part of Harbor's responsibility. In fact, because the capscrews were completely encased within the pulley mechanism, Harbor could not have checked the torquing levels without completely disassembling the preassembled head pulley component.
As a nonmanufacturer seller, Harbor can have no tort liability for a defective product unless Harbor knew or should have known the product was defective and failed to declare it. Home Insurance Company v. National Tea Company, 577 So.2d 65, 74 (La.App. 1st Cir.1990). Under the law, a nonmanufacturer seller is not required to inspect the product prior to sale to determine the possibility of inherent vices or defects. Id.; Picolo v. Flex-A-Bed, Inc., 466 So.2d 652, 654 (La.App. 5th Cir.1985). Therefore, the trial court correctly held that because the alleged defect in the head pulley was not readily apparent, Harbor as a matter of law could not be found liable for failing to discover it. Harbor's involuntary dismissal was proper.

Dismissal of Browning
Browning is the manufacturer of an allegedly defective bushing which was incorporated into the head pulley assembly of the elevator by Essmueller, the designer and manufacturer of the bucket elevator. Plaintiff alleged that the Browning bushing was defective in its design and manufacture, and also that it was not accompanied by adequate warnings. At the conclusion of the plaintiff's case, counsel for plaintiff conceded that there was no defect in the manufacture of the bushing. Furthermore, when questioned at trial, plaintiff's own experts admitted that the bushing did not have a defective design.
Plaintiff's final claim against Browning was for a failure to warn. Plaintiff introduced into evidence the written instructions/warnings which were provided to Essmueller by Browning. These instructions contain information on the recommended wrench torque, as well as a warning that the bushings and capscrews should be rechecked for proper torquing at least once per week for the first month and periodically thereafter. We find, as did the trial judge, that the instructions/warnings provided by Browning were more than adequate, especially for Essmueller, a sophisticated user. Therefore, the dismissal of Browning was proper.

Dismissal of Essmueller
The trial court's conclusion that Essmueller was not liable for the accident because of plaintiff's failure to prove causation is a factual determination which we will not disturb absent manifest error. Canter v. Koehring, 283 So.2d 716, 724 (La.1973). Plaintiff argues on appeal that this standard does not apply because the trial judge committed a legal error by evaluating the evidence according to an incorrect standard of proof.
We disagree.
Plaintiff's argument is based upon this excerpt from the trial court's Reasons for Judgment:
The Court is presented with only circumstantial evidence that Essmueller's failure to re-torque the capscrews allowed the pulley to move on its shaft, causing this accident. As such, in order to recover, plaintiff's circumstantial evidence must preclude every other reasonable hypothesis as to the cause of the accident.
Citing this passage, plaintiff contends that the trial judge utilized an old, now abandoned standard of proof which required the plaintiff to negate all other possibilities as to the cause of the accident. The correct standard in civil cases was first set forth in Naquin v. Marquette Casualty Company, 153 So.2d 395 (La.1963), and restated by the Court in Boudreaux v. American Insurance Company, 262 La. 721, 264 So.2d 621, 636 (1972), as follows:
Further, as we specifically held in Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395 (1963), by this burden of proof, the circumstantial evidence requisite in civil negligence cases need not negate all other possible causes of injury, as the opinions of the previous courts seemed to hold. It suffices if the circumstantial proof excludes other reasonable hypotheses only *689 with a fair amount of certainty, so that it be more probably than not that the harm was caused by the tortious conduct of the defendant. 153 So.2d at 396-397.
Although the trial judge in this instance did not quote the Naquin standard fully, his use of the term "reasonable hypothesis" rather than "possibilities" or "possible causes" indicates that he did indeed follow the proper standard. Plaintiff's contention that this standard has been changed by the recent case of Lasha v. Olin Corporation, 625 So.2d 1002 (La.1993) is erroneous. The Lasha Court merely reiterated, citing Naquin, that plaintiff must prove each element of his case, such as causation, by a preponderance of the evidence, which means the fact sought to be proved must be more probable than not. 625 So.2d at 1005.
In reviewing the record, we find that the trial court did not commit manifest error in concluding that the plaintiff had failed to show that the explosion at the grain elevator was more probably than not caused by Essmueller's failure to properly torque and/or re-torque the capscrews in the head pulley. By the testimony of those who examined the elevator immediately following the accident, plaintiff showed that the pulley had moved on its shaft and that the screws were not tightened to the manufacturer's recommended torque of 250 foot lbs., which was the responsibility of Essmueller. In fact, the capscrews on the motorized end of the pulley were torqued at 150 foot lbs. Nevertheless, plaintiff failed to show that this defect caused the accident.
Plaintiff's expert, Mr. Owens, opined that the improperly torqued capscrews had allowed the head pulley and shaft to move laterally and come in contact with the shroud. Mr. Owens believed that this conclusion was obvious. He did admit, however, that manufacturers generally set torque standards utilizing a "margin of error" or "safety factor".
Defendant's expert, Mr. Cooper, established that in this case, Browning had designed the bushing using a safety factor of 2 ½ :1. Mr. Owens admitted that using this figure, the torque of 150 foot lbs., which existed after the accident, should have been sufficient to hold the bushing on the shaft. To test plaintiff's theory of causation, defendant's expert Mr. Cooper performed a test, which was videotaped and introduced into evidence, in which lateral force of varying degrees was applied to an allegedly identical shaft and bushing torqued at only 75 foot lbs. In that test, no lateral movement of the bushing occurred even when a force of 29 tons, the greatest force used in the test, was applied. Although plaintiff contends on appeal that this test was not truly representative of the accident situation, no testimony or evidence was introduced at trial to call into question the test methodology or results.
The trial judge noted on the record, after the presentation of the plaintiff's case, that he was concerned that Mr. Owens did not know how much force would be required to move the pulley on its shaft, and further that Owens hadn't performed any tests or calculations to determine the load on the shaft or the tolerance of the torque level of the bolts. However, at that juncture of the case, the trial judge denied a motion for involuntary dismissal of Essmueller because he needed to see more evidence. The only testimony presented after the trial judge's denial of the motion was that of defendant's expert, Mr. Cooper. The trial court was obviously impressed by Mr. Cooper's testimony, as well as by the evidence supporting it. The plaintiff's failure to present evidence challenging Mr. Cooper's test, coupled with the lack of any specific testing or calculations to support Mr. Owens' opinion, makes it reasonable for the trial judge to have concluded that causation was not proved by a preponderance of the evidence. We therefore find no manifest error in his conclusion.
Accordingly, for the reasons given, we affirm the judgment of the trial court.
AFFIRMED.