726 So.2d 62 (1998)
Keith PARKS, Sr. and Terri L. Slaughter on Behalf of their minor children, Kevin PARKS and Keith Parks
v.
BABY FAIR IMPORTS, INC., et al.
No. 98-CA-626.
Court of Appeal of Louisiana, Fifth Circuit.
December 16, 1998.
Lance S. Ostendorf, Katherine H. Foster, Colin Sherman, Metairie, Louisiana, Attorneys for Defendant/Appellee/Appellant, Colonial Printing Inks Corporation.
Marks S. Goldstein, Alicia M. Bendana, New Orleans, Louisiana and Dennis S. Mann, New Orleans, Louisiana, Attorneys for Plaintiffs/Appellants.
Gregory G. Gremillion, Thomas W. Darling, Gretna, Louisiana, Attorneys for Defendant/Appellee, K-Mart Corporation.
Before Judges H. CHARLES GAUDIN, JAMES L. CANNELLA and THOMAS F. DALEY.
DALEY, Judge.
This is a products liability suit. Plaintiffs appeal the summary judgment granted in favor of defendant, K-Mart Corporation. Keith Parks, Sr. and Terry Slaughter sued K-Mart, Baby Fair Imports, Inc., and other defendants for injuries sustained by their *63 three year old son when he played with a disposable lighter, causing his shirt (purchased at K-Mart) to ignite. The child sustained burns over his chest and arms. His parents sued K-Mart, among other defendants, alleging that K-Mart was a manufacturer/seller of the defective shirt pursuant to the provisions in the Louisiana Products Liability Act, LSA-R.S. 9:2800.53, and was thus liable to plaintiffs for damages caused by flammability of the fabric. K-Mart filed a Motion for Summary Judgment, alleging that they did not exercise control over the manufacture of the shirt sufficient to render them a manufacturer under the definitions of the LPLA. After a hearing, the trial court granted summary judgment in favor of K-Mart and designated the judgment as final for the purposes of immediate appeal. The plaintiffs and another defendant, Colonial Printing Inks, appeal.
On appeal, appellants argue that a material issue of fact remains as to whether the sufficiency of K-Mart's control over the manufacturing process of the shirt renders it a manufacturer/seller under the LPLA, and thus potentially liable for the defects in the shirt. For the following reasons, we affirm the trial court's grant of summary judgment in favor of K-Mart.

ANALYSIS
A Motion for Summary Judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue of material fact and that mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.
The Louisiana Products Liability Act, in R.S. 9:2800.53, contains the following pertinent definitions:
(1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce. "Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:
* * * * * *
(b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.
* * * * * *
(2) "Seller" means a person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value.
On appeal, appellants argue that evidence shows K-Mart exercised control over and influenced the design and construction of the shirt, and thus is a manufacturer/seller upon whom liability can be imposed under the Act. They present evidence that K-Mart custom ordered the shirt from Baby Fair, that it was not available "on the shelf", but was made to K-mart's specific instructions. They also argue that K-Mart exercised control over and/or influenced the construction and quality of the t-shirt by requiring that it pass certain tests regarding construction and fabric quality, as implemented by K-Mart's quality assurance testing program.
K-Mart argues that it is only a seller of the shirts, and that it had no reason to know of or suspect any defect in the product. They argue that they merely placed an order from Baby Fair and did not design or influence the construction of the shirt. K-Mart admitted that it did not test the shirt for flammability.
Both K-Mart and plaintiffs attached to their memoranda with the summary judgment motion a document entitled "Work Order." The order date is 1/19/93 and the delivery date is 5/01/93. It orders style C9181A, print San Jose Sharks, fabric 55c/45p jersey (1.85) & 1×1 rib. It is described as "boys 2T-4T set in short sleeve t-shirt w/screenprint and double needle treatment no pocket; garment # 132." The color for the body and trim is specified as "It. mayan 6286." Special instructions on the bottom of this work order are "K-mart price ticket # 9171, licensed sports size tag, K-12 natural hanger, pack with C9181A/B/C/D".
Counsel for K-Mart stated that the attachment of the K-Mart price tag and the placement *64 of the shirt on the hanger by the manufacturer are services for K-Mart's convenience and are not intrinsic qualities of the shirt.
Counsel for plaintiffs argues that this work order shows that K-Mart "exercise(d) control over or influence(d) a characteristic of the design, construction or quality of the product that causes damage," and thus is a manufacturer/seller.
The issue in this case is defective fabric that was flammable. K-Mart's work order form requests a non-specific 55% cotton/45% polyester jersey with a 1×1 rib. It also requests that the shirts be a certain color offered by Baby Fair. Beyond specifying the fiber content and color of the fabric, K-Mart apparently had nothing else to do with the fabric selection. The specific selection of a particular type of 55cotton/45polyester jersey was left to the manufacturer.
We agree with the trial court that K-Mart's placement of this order with Baby Fair does not rise to the level of exercising control over or influencing a characteristic of the design, construction or quality of the product. It appears that K-Mart made a selection from goods available from Baby Fair. Plaintiffs' interpretation would turn all sellers who made specific selections of goods offered from manufacturers into manufacturers themselves. We believe that the legislature intended more direct and specific conduct on the part of the seller than that exhibited by K-Mart in this case. Thus, we conclude that K-Mart was not a manufacturer/seller of the shirt.
A non-manufacturing seller of a defective product is not responsible for damages in tort absent showing that he knew or should have known that the product was defective and failed to declare it. Wilson v. State Farm Fire & Casualty Ins. Co., 94-1342 (La.App. 3 Cir. 4/5/95), 654 So.2d 385. Furthermore, a non-manufacturer seller is not required to inspect the product prior to sale to determine the possibility of inherent vices or defects. Ferruzzi v. R.J. Tricon Co., Inc., 93-1591 (La.App. 4 Cir. 9/29/94), 645 So.2d 685.
K-Mart also testified that it had in place a quality inspection program, but it is unclear whether the program began before or after the shirts were delivered and on the floor. K-Mart testified that it did not test the shirts for any defects, including flammability, asserting that they believed the manufacturer had already done so. It is clear from K-Mart's description of the tests they perform on garments that these tests are in the nature of soundness in construction of the garment and the wear and tear performance of the fabric. These quality assurance tests, which are performed on a finished garment already delivered to K-Mart, do not elevate K-Mart into a manufacturer. The characteristics of the garment have already been determined by the manufacturer, and K-Mart's testing program simply determines if the garments are of the requisite quality to sell in their stores.
James Donahue testified by deposition for K-Mart. He is the head of the quality assurance department and has been with K-Mart since February of 1993. He stated that K-Mart started their own testing program on February 15, 1993, and that he was in charge of it. Previously, an outside laboratory named MTL performed K-Mart's testing, and was instrumental in helping K-Mart start its own lab.
Donahue testified that his was a testing lab, not a research lab. They follow the federal guidelines in all areas of testing textiles. He testified that under the federal guidelines, the shirt in question would have been exempt under federal guidelines for flammability testing because the weight of the fabric exceeded the federal requirements for testing. Only fabrics with a weight of under 2.6 oz. per square yard are required to be tested for flammability. He stated that the weight of the fabric is the only relevant testing factor, and issues like decals are not considered under the federal guidelines. (CFR 1610 also exempt certain fiber types.) On this specific shirt, Donahue testified that K-Mart would have performed tests for fiber content, shrinkage, laundering instructions, and crocking (a dye fast test). K-Mart would not have tested for flammability a *65 fabric that is determined to be exempt under the Flammable Fabrics Act.
Under the LPLA, K-Mart as a non-manufacturing seller is not liable to the plaintiffs for the alleged defect in the shirt. The fact that K-Mart has a quality assurance program does not make them a manufacturer under LSA-R.S. 9:2800.53(1)(b).
The judgment of the trial court is affirmed. Appellant to pay all costs of this appeal.
AFFIRMED.