# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

January 4, 2012

No. 10-31183

Lyle W. Cayce
Clerk

JAMES J. AYO, III; ROBERT F. BOYKIN; CLARK DAVIS, III; DEQUAL D. PLEASANT,

Plaintiffs–Appellants,

v.

TRIPLEX, INCORPORATED,

Defendant–Appellee.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:06-CV-688

Before HIGGINBOTHAM, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:[*]

James Ayo, Robert Boykin, Clark Davis, and DeQual Pleasant (the Workers) filed suit against Triplex, Inc. They alleged that Triplex was liable to them for injuries they sustained after a chlorine gas leak occurred at their workplace. Triplex sold the chlorine hose that ruptured in the incident. The United States District Court for the Middle District of Louisiana granted summary judgment in favor of Triplex. The Workers now appeal. We affirm.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-31183

## I

The Workers contend that they were injured when chlorine gas leaked from a hose at a Honeywell International, Inc. facility. At the time, they were working for another company, Proserve Hydro, that is not a party to this suit. The Workers asserted that the chlorine gas leaked from a hose sold to Honeywell by Triplex. The Workers filed suit under Louisiana law against Honeywell, Triplex, Lee Hunsucker (a Honeywell plant manager), and the Illinois Central Railroad Company. The Workers argued that Triplex was liable for their injuries, either by virtue of negligence or as the manufacturer of the failed hose. The non-Triplex defendants are not parties to this appeal.

Triplex moved for summary judgment below, arguing that it was not a "manufacturer" within the meaning of the Louisiana Products Liability Act[1] (LPLA) and had not acted negligently in distributing the hose. The Workers filed a cross-motion for summary judgment. According to the declarations attached to Triplex's motion, Crane Resistoflex manufactures hoses comprised of a Teflon "'inner-core,'" described as "a plastic tube in the center of the hose," surrounded by Hastelloy-braided material, described as "the reinforcing cover of the hose." Together, these are known as "Resistoflex Part # HB30HB30HB-1560." These parts are shipped in bulk to Triplex and other distributors. Triplex, upon placement of an order by a customer, "cuts it to the desired length, and then installs Resistoflex-approved fittings on each end. The hose is then visually inspected, pressure-tested and all information is recorded on the test certificate." If a customer requests, Triplex wraps the hose with a "spiral scuff guard made by F&R Manufacturing" that protects it "from being scraped, nicked[,] or cut." The record includes a "RESISTOFLEX CHLORINE HOSE

---

[1] LA. REV. STAT. ANN. § 9:2800.53(1) (2009).

2

No. 10-31183

ASSEMBLY TEST CERTIFICATE" listing "MANUFACTURER: RESISTOFLEX" for the hose involved in the instant incident. The record also includes a declaration from a Honeywell employee that Honeywell specified the parts of the hose: "Honeywell's specifications called for use of a Teflon® Hastelloy-braided hose (Resistoflex Part #HB30HB30HB-1560) that is manufactured by Resistoflex and supplied by Triplex, and with 300# ANSI Hast-C flanges on each end of the hose."

Additionally, the parties attached declarations to their motions regarding the potential causes of the rupture in the hose. James Lloyd, P.E., a reliability engineering leader at Honeywell, declared that the hose ruptured "at least a foot away from the closest end-fitting." This view was echoed by the Workers' expert, Ara Nalbandian, P.E. In his deposition, Nalbandian affirmed that he believed the rupture occurred two to three feet from the end fittings and that Triplex's installation of the end fittings on the finished hose had not played any role in the rupture.

Both parties also attached Appendix A of the Chlorine Institute's Pamphlet 6 (Institute Pamphlet) to their summary judgment briefs. In their briefs on appeal, both parties reference the Institute Pamphlet to demonstrate what the general industry practices were for those considered "manufacturers" or "assemblers" within industry parlance.

The district court granted Triplex's motion for summary judgment and denied the Workers' cross-motion. The court concluded that Triplex was not a "manufacturer" within the meaning of the LPLA; that—insofar as the Workers had argued it by implication—Triplex was not an apparent manufacturer; and that Triplex was not liable in tort. With regard to the merits of the district court's rulings, the Workers appeal only the district court's determination that Triplex was not a "manufacturer" within the meaning of the LPLA.

No. 10-31183

## II

As a threshold issue, Triplex contends that the Workers' notice of appeal is infirm.  It contends that defects in the notice of appeal may have rendered this court without jurisdiction to consider the Workers' appeal.  We review our subject matter jurisdiction de novo.[2]  The notice of appeal stated:

> PLEASE TAKE NOTICE that Walter C. Dumas and Dumas & Associates Law Corporation hereby appeal to the United States Court of Appeals for the Fifth Circuit the District Court's October 13, 2010, Judgment granting defendants Motion for Summary Judgment.

Dumas and his law firm were counsel of record for all four of the Workers.  All of the Workers' names were listed in the case caption included in the notice of appeal. The district court's ruling granting summary judgment in favor of Triplex was, in fact, dated October 13, 2010.

The notice of appeal was sufficient.  Federal Rule of Appellate Procedure 3(c)(4) states, "An appeal must not be dismissed . . . for failure to name a party whose intent to appeal is otherwise clear from the notice."  Moreover, we have held that the "'primary purpose'" of the Federal Rules of Appellate Procedure is "'the securing of speedy and inexpensive justice in a uniform and well ordered manner'" rather than "'to set traps and pitfalls by way of technicalities for unwary litigants.'"[3] Accordingly, our inquiry is not whether specific individuals are named, but rather whether a notice of appeal "contains the identity of the party or parties appealing."[4]  Here, though perhaps inartfully, the notice of appeal indicated that the counsel of record for the four Workers intended to appeal the order granting summary judgment, providing the date included on

---

[2] *Garcia-Melendez v. Ashcroft*, 351 F.3d 657, 660 (5th Cir. 2003).

[3] *Hernandez v. Thaler*, 630 F.3d 420, 425 (5th Cir. 2011) (per curiam) (quoting *Des Isles v. Evans*, 225 F.2d 235, 236 (5th Cir. 1955)).

[4] *Bailey v. Cain*, 609 F.3d 763, 765 (5th Cir. 2010), *cert. denied*, 131 S. Ct. 931 (2011).

the district court's ruling. Indeed, under the Rules "an attorney representing more than one party may describe those parties with such terms as 'all plaintiffs,' 'the defendants,' 'the plaintiffs A, B, et al.,' or 'all defendants except X.'"[5] Given the permissibility of such blanket terms, and that the rules do not set "traps" for the unwary, the statement that "Walter C. Dumas" intended to appeal the instant summary judgment and the inclusion of all four of the Workers' names in the case caption sufficed.

### III

Addressing the merits of this appeal, the Workers contend that the district court improperly granted summary judgment to Triplex. They argue that Triplex is a manufacturer within the meaning of the LPLA, and they argue that they are entitled to summary judgment in their favor. We review a grant of summary judgment de novo.[6]

The Louisiana Supreme Court has identified four elements that a plaintiff must establish to maintain an action for products liability under the LPLA:

> (1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product "unreasonably dangerous;" and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else.[7]

The district court concluded that the first requirement was not met. As is relevant here, the LPLA provides the following definition of "manufacturer":

> (1) "Manufacturer" means a person or entity who is in the business of manufacturing a product for placement into trade or commerce.

---

[5] FED. R. APP. P. 3(c)(1)(A).

[6] *Oreck Direct, LLC v. Dyson, Inc.*, 560 F.3d 398, 401 (5th Cir. 2009) (citing *Whitt v. Stephens County*, 529 F.3d 278, 282 (5th Cir. 2008)).

[7] *Jack v. Alberto-Culver USA, Inc.*, 2006-1883, p. 4 (La. 2/22/07); 949 So. 2d 1256, 1258 (citing LA. REV. STAT. ANN. § 9:2800.54(A)).

"Manufacturing a product" means producing, making, fabricating, constructing, designing, remanufacturing, reconditioning or refurbishing a product. "Manufacturer" also means:

(a) A person or entity who labels a product as his own or who otherwise holds himself out to be the manufacturer of the product.

(b) A seller of a product who exercises control over or influences a characteristic of the design, construction or quality of the product that causes damage.

(c) A manufacturer of a product who incorporates into the product a component or part manufactured by another manufacturer.[8]

Sitting in diversity, this court seeks to determine "what the highest court of the state would decide,"[9] and we have recognized that a "'decision by an intermediate appellate state court is a datum for ascertaining state law.'"[10]

The decision of a Louisiana court of appeals in *Haley v. Wellington Specialty Insurance Co.*,[11] relied upon by both the district court and Triplex, is instructive. In that case, Haley was fatally electrocuted while installing an electric sign. The sign was sold by retailer Ward, who ordered it from Sign Builders. Ward contended that he was not a "manufacturer" of the sign within the meaning of the LPLA.[12] The court had the following facts before it:

(1) Ward ordered the sign from Sign Builders; (2) Sign Builders manufactured the sign, including the installation of the ballast and shipped the sign to Ward; (3) Ward performed certain acts with regard to the sign, including extending the power cord of the sign to

---

[8] LA. REV. STAT. ANN. § 9:2800.53(1) (2009).

[9] *Transcon. Gas Pipe Line Corp. v. Transp. Ins. Co.*, 953 F.2d 985, 988 (5th Cir. 1992) (citations omitted).

[10] *First Nat'l Bank of Durant v. Trans Terra Corp. Int'l*, 142 F.3d 802, 809 (5th Cir. 1998) (quoting *Tex. Dep't of Hous. & Cmty. Affairs v. Verex Assurance, Inc.*, 68 F.3d 922, 928 (5th Cir. 1995)) (internal quotation marks omitted).

[11] 44,014 (La. App. 2 Cir. 2/25/09); 4 So. 3d 307.

[12] *Id.* at 310.

the mounting plate, placing the light bulbs in the sign, installing the facing on the sign, applying lettering on the sign, fabricating the pole to hold the sign, constructing the mounting plate to mount the sign, bolting the mounting plate to the sign and plugging the sign in to see if it worked properly.[13]

The evidence revealed that the Haley's electrocution resulted from a pinched ballast; accordingly, though "Ward clearly assembled the sign, as well as performed other actions necessary to prepare the sign for installation," the court held Ward was not a "manufacturer" because there was "no indication in the record that any of the actions taken by Ward had anything to do with the installation of the inner workings of the sign, including the inner wiring and/or installation of the ballasts, or that Ward contributed in any way to the pinching of the wire."[14]

Here, analogously, though Triplex cut the Resistoflex hose and installed the end fittings, even the Workers' expert conceded that the rupture did not arise as a result of those modifications. This is akin to *Haley*, in which it was not dispositive that a number of significant structural changes were made to the sign—for instance, constructing the mounting plate and installing the facing—when those changes were not linked to the product's failure. Similarly, there was no evidence here to suggest that the pressure testing caused the hose's subsequent failure. Indeed, the Workers have not argued that pressure testing altered the hose or caused damage that made the hose susceptible to rupture. As in *Haley*, in which the seller tested the sign "to see if it worked properly,"[15] the simple act of testing a product after modifications does not transform a seller into a statutory "manufacturer."

---

[13] *Id.* at 311.

[14] *Id.* at 312.

[15] *Id.* at 311.

No. 10-31183

Further, the argument that Triplex is a "manufacturer" by virtue of exercising "control over or influenc[ing] a characteristic of the design, construction or quality of the product that causes damage"[16] is unavailing, insofar as the Workers advance it. Louisiana's Fifth Circuit Court of Appeals rejected the plaintiffs' argument that K-Mart exercised such control over a shirt that caught fire by selecting its material mixture, color, and some of its dimensions.[17] Here, Triplex exerted even less control: the record indicates that Honeywell specified the exact Resistoflex part number and the end fittings. Nor was there any evidence that the scuff guard contributed to the hose's failure.

Concluding that Triplex was not a "manufacturer" under the LPLA is also consistent with our previous allusion to the LPLA in this context. In *Brooks v. Vitek, Inc.*,[18] we considered the proper statute of limitations under Louisiana law to apply to a dentist, Akin, who inserted a Proplast implant during surgery. The Brooks family contended that Akin was a "manufacturer" of the implant under Louisiana law and that the prescriptive period for malpractice was inapplicable in that context.[19] In that case, the record indicated that "the Proplast material used by Dr. Akin came to him in square pieces and that Dr. Akin fitted the material specifically for the TMJ implant."[20] Though the LPLA was enacted during the time between the injury and the filing of the appeal, this court cited not only to the Louisiana common law, but also to the LPLA.[21] As a result, we

---

[16] LA. REV. STAT. ANN. § 9:2800.53(1)(b) (2009).

[17] *Parks ex rel. Parks v. Baby Fair Imports, Inc.*, 98-626, p. 6 (La. App. 5 Cir. 12/16/98); 726 So. 2d 62, 64.

[18] 875 F.2d 499 (5th Cir. 1989).

[19] *Id.* at 500.

[20] *Id.*

[21] *Id.* at 501 (citing LA. REV. STAT. ANN. § 9:2800.52(1), .53(1) (West Supp. 1989)).

concluded that "Dr. Akin's manipulation of the Proplast material does not transform him from a doctor providing patient care into a 'manufacturer' of a product."[22] Similarly, Triplex's converting of the Resistoflex hose into a finished hose does not transform Triplex, *ipso facto*, into a "manufacturer" under the LPLA without a link between its actions and the failure of the hose.

This conclusion is not altered by the Workers' discussion of discrepancies in the pressure testing listed for the hose. Though that evidence may show a contested issue of fact, it is not an issue of material fact with respect to the district court's conclusion that Triplex was not an LPLA "manufacturer" because there is no suggestion that this testing damaged the hose. This is also true of the Workers' discussion of the relative thickness of various parts of the hose because it does not address Triplex's role as a purported "manufacturer" of the hose—the sole question raised on appeal. Similarly, the parties' debate regarding the Institute Pamphlet's use of "manufacturer" is of little import, standing alone, in determining what the Louisiana Legislature meant by the use of the same term in a broadly-applicable statute. Insofar as this could be theoretically linked to the apparent-manufacturer doctrine, the Workers do not discuss that doctrine on appeal. This constitutes waiver of that issue.[23]

*     *     *

We AFFIRM.

---

[22] *Id.*

[23] *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000) (per curiam).